[Crim. No. 12055. Second Dist., Div. Four. Aug. 24, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. MIKE LOPEZ MOLANO, Defendant and Appellant.

Richard S. Buckley, Public Defender, Fred Kilbride and James L. McCormick, Deputy Public Defenders, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Daniel J. Kremer and August J. Ginocchio, Deputy Attorneys General, for Plaintiff and Respondent.

JEFFERSON, J.—Mike Lopez Molano and Norma Lee Tuck were jointly charged with burglary. The same information charged Tuck alone with possession of marijuana (Health & Saf. Code, § 11530.) A prior felony conviction for possession of narcotics (Health & Saf. Code, § 11500), was alleged against Molano. Before the trial commenced, Molano admitted the prior conviction and moved to sever from the proceedings the marijuana charge against his codefendant. The court denied the motion. Defendants were tried by a jury and convicted as charged. Molano alone appeals from the judgment.

Briefly, these are the facts: When Bill Warren returned to his home at about 4 p.m. on April 3, 1965, he discovered the house had been broken into. No one had his permission to enter. A screen on the bedroom window was cut and the doors, which he had left locked, were open. Missing was his typewriter, an adding machine, $290 he had left in a shirt in a closet and four $2 bills which were inside a can in the kitchen.

He left the house that morning at about 11 a.m. accompanied by defendant Tuck, a female friend whom he had known for about six months. Upon his discovery of the burglary, he immediately called the police. He informed them he believed Tuck was responsible.

D. J. Collier was the investigating officer on the case. He talked to Warren on April 4. Warren told him that he suspected Tuck. After further investigating the case, on April 21 he arrested Tuck and Molano at an apartment on Huntington Drive. When Tuck first opened the door, the officer observed Molano lying on a bed in the living room. He advised them both of their constitutional rights to silence and counsel, and they stated they understood. He and his partner officers then searched the apartment. They found Warren's typewriter in the kitchen. They also found two marijuana cigarettes in a kitchen drawer and a newspaper-wrapped package of marijuana on a balcony adjacent to the living room and kitchen. They discovered Warren's adding machine in the trunk of Tuck's car after she told them where it was located.

Both defendants gave statements to Collier at the apartment and a short time later when they arrived at the police station. Tuck admitted having gone to Warren's apartment with Molano, having broken in and having taken a typewriter, adding machine and about $115 in cash. She indicated she told Molano they were going to the apartment to borrow the typewriter and adding machine. Upon being questioned about the marijuana, she stated that it belonged to her; that Molano knew nothing about it; she had, the day before, traded a Mexican six rolls of reds (Nembutal) for the marijuana found in the package on the balcony; she traded one roll of reds to a "hype" who had come to the door that morning for the two marijuana cigarettes found in the kitchen.

Molano stated to Officer Collier that he went to the house with Tuck, who told him it belonged to Warren. After they forced the screen on the window, they entered and took a typewriter and adding machine. He related that he knew nothing about any money; that he did not get any.

In her testimony, Tuck stated that she had been seeing Warren about three times a week for more than a year. Before they left his house on the morning of April 3, he told her she could use his typewriter and adding machine to practice for a job. She told him she would pick them up later that day. When she came back with Molano and could not find the key where it was usually located, they went inside through a window and took the typewriter and adding machine. She did not take any money and did not tell the officers that she had done so. She knew nothing about the marijuana and denied telling the officers it belonged to her.

Molano did not testify.

He contends the trial court abused its discretion in failing to grant his motion to have the marijuana charge against his codefendant tried separately from the burglary count they were both charged with committing. It is his position that, under the circumstances, the denial of the motion deprived him of a fair trial.

In determining whether there was an abuse of discretion in the denial of the motion for severance, we must look to the facts before the court at the time the motion was made. (*People* v. *Santo,* 43 Cal.2d 319, 332 [273 P.2d 249].) Defendant made the motion on the day of the trial and before the selection of the jury. As a basis for the motion, his counsel argued that the presence of the marijuana charge against his codefendant would have a prejudicial effect on his case, since the marijuana was found at a place where both he and the codefendant were living when arrested. Counsel asserted that the offenses were not properly joined; that no tangible connection existed between the offenses other than the fact the marijuana was found at the time the defendants were arrested on the burglary charge.

When the motion was made, the court inquired whether counsel for the People was in opposition to it. No opposition was voiced. Just before making the motion, the fact of defendant Molano's prior narcotics record was called to the court's attention.

Section 954 of the Penal Code permits joinder of different offenses where they relate to the same transaction or event, or where there is a common element of substantial importance in their commission. (*People* v. *Scott,* 24 Cal.2d 774, 778-779 [511 P.2d 517].) Section 1098 provides for joint trials of defendants jointly charged. (*People* v. *Chapman,* 52 Cal.2d 95, 97 [338 P.2d 428].) These sections do not permit the joinder or consolidation for trial of an information or informations charging different defendants with separate, distinct and unconnected crimes. (*People* v. *Davis,* 42 Cal. App.2d 70, 72 [108 P.2d 85]; see also *People* v. *Duane,* 21 Cal.2d 71, 76 [130 P.2d 123].) This was the case here. The burglary and the marijuana charges were indeed unrelated and therefore not properly joined.

As counsel for defendant in essence argued when the motion for severance was made, since the narcotics were found in an apartment he and his codefendant shared, to allow the narcotics charge to be tried against her in their trial on the

burglary charge, created the very real possibility that the jury would in effect try him for that offense along with her; that not being able to convict him of that charge, could prejudicially influence his case on the burglary charge. (See *People* v. *Chambers*, 231 Cal.App.2d 23 [41 Cal.Rptr. 551].)

An added point which the court had to consider, was the fact that if defendant chose to testify, his prior narcotics record could have been brought to the attention of the jury. As it turned out, defendant elected not to testify. (His counsel later indicated his decision not to put defendant on the stand was motivated by this realization.)

We conclude that, under the circumstances presented, the court below abused its discretion in not severing the marijuana charge from the proceedings; further, that the error was prejudicial to defendant, denying him a fair trial and requiring the reversal of the judgment.

■ The Attorney General maintains that defendant's motion was properly denied because it was not timely made. It is argued that because misjoinder is a point which may be raised by demurrer to the accusatory pleading before the entry of the plea (Pen. Code, § 1004, subd. 3), and since the claimed defect appeared on the face of the complaint, it could be raised only in this manner. (Pen. Code, § 1012; *People* v. *Cummings*, 173 Cal.App.2d 721, 730 [343 P.2d 944].) While it would have been far better practice for counsel to have presented the question to the court by way of demurrer, the motion was made prior to the trial and in a manner sufficiently apprising the court of the grounds therefor. The lateness of the motion did not prejudice the People, as the prosecution conceded by declining to oppose it. In view of this fact and that the motion related to the essential fairness of the trial, the court should have acted then to sever the counts or the defendants.

Two additional points raised by defendant warrant brief discussion.

The court gave the following instruction to the jury: "It is a constitutional right of a defendant in a criminal trial that he may not be compelled to testify. Thus the decision as to whether he should testify is left to the defendant, acting with the advice and assistance of his attorney. You must not draw any inference of guilt from the fact that he does not testify." (Taken from CALJIC 51.) The above instruction was given over the strenuous objection of defendant.

■ Since *Griffin* v. *California* (Apr. 1965) 380 U.S. 609

[14 L.Ed.2d 106, 85 S.Ct. 1229] either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt, are forbidden. Defendant contends, and we believe correctly so, that to give this instruction when he did not want it to be given, was tantamount to making a ''comment'' proscribed by *Griffin*. The argument being that such an instruction highlights and emphasizes the fact that the accused did not take the stand.

Particularly apt here we believe, is the comment of Mr. Justice Douglas in his dissenting opinion in *United States* v. *Gainey* (Mar. 1965) 380 U.S. 63, 73 [13 L.Ed.2d 658, 674, 85 S.Ct. 754] which case involved the application of a statutory presumption of guilt where the accused fails to explain his presence at the site of an illegal distillery business. Arguing that the trial court's instructions requiring the drawing of the statutory inference violated the privilege against self-incrimination by improperly commenting on the accused's failure to testify, Justice Douglas said (at p. 73 [13 L.Ed.2d at p. 674) : ''Just as it is improper for counsel to argue from the defendant's silence, *so is it improper for the trial judge to call attention to the fact of defendant's silence.* Indeed, under 18 U.S.C. § 3481 the defendant is entitled as a matter of right to have the trial judge expressly tell the jury that it must not attach any importance to the defendant's failure to testify; *or, if the defendant sees fit, he may choose to have no mention made of his silence by anyone. Bruno* v. *United States*, 308 U.S. 287 [84 L.Ed. 257, 60 S.Ct. 198].'' [Italics added.]

The court also gave the instruction: ''In theft two elements are necessary : First, an intent at the time when the possession and control of the property is obtained to permanently deprive the owner of some certain property having any intrinsic value; and second, a carrying away of the property; but in order to constitute a carrying away, the property need not be retained in the possession of the thief; neither need it be removed from the premises of the owner. Any removal of the article from the place where it was kept by the owner, done with the intent I have described, and whereby the thief obtains possession and control of the property at least for a fraction of time is sufficient to constitute the element of carrying away.'' The above instruction was given at the request of defendant. However, immediately following it, the court added a handwritten, apparently unsolicited instruction : ''One of the questions in this case is, did the defendants *or*

*either of them* enter Mr. Warren's house with intent to commit theft as I have just defined it." [Italics added.] The latter instruction might have given the jury the erroneous impression that if either defendant had the intent to steal when they entered the house, both were guilty. Molano's entire defense was that, although he entered along with his codefendant, he did not have the requisite intent to commit a theft therein. His codefendant's testimony and extrajudicial statements entirely support this defense. Under the circumstances presented, the giving of this instruction could have been especially damaging to Molano's case.

The judgment is reversed.

Files, P. J., and Kingsley, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied October 19, 1967.