THE PEOPLE, Plaintiff and Respondent, v. WILLIAM BRYANT MASON, Defendant and Appellant.

William Bryant Mason, in pro. per., and William A. Crim, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Elizabeth Miller and Mark W. Jordan, Deputy Attorneys General, for Plaintiff and Respondent.

KINGSLEY, J.—Defendant was charged in four counts with forgery of a check for $128 with intent to defraud (Pen. Code, § 470), forgery of a fictitious name on two checks, in the amount of $51 each, with intent to defraud (Pen. Code, § 470), issuing a check without sufficient funds with intent to defraud (Pen. Code, § 476). Defendant was also charged with a prior conviction of forgery, a felony, on September 11, 1951, and two other prior convictions of forgery, both felonies, on March 31, 1956, and March 24, 1958.

Defendant pled not guilty to each count and denied each prior. Defendant moved to have the cause transferred to federal court, which was denied. Defendant moved to be relieved of counsel and he proceeded *in propria persona*. Proceedings

were suspended pending determination of removal proceedings in the United States District Court. When those proceedings resulted in an order of remand, the case was again placed on the calendar of the state trial court. After a trial by jury, defendant was found guilty on all counts and the jury found "the alleged prior felony" to be true. A motion for a new trial was made and denied, probation was denied, and defendant was sentenced to state prison on all four counts, the sentences being ordered to run concurrently.

Defendant has appealed from the order denying his motion for a new trial and from the judgment. We dismiss the attempted appeal from the order denying a new trial, since that order is not appealable (Pen. Code, § 1237); we affirm the judgment.

Defendant went to the police station to report that certain checks had been stolen. At a later date, the police received some checks with defendant's name on them, and defendant was contacted. Defendant claimed he knew nothing about it and offered to submit a handwriting exemplar. On July 18, 1963, defendant filled out a handwriting exemplar for Detective Smith of the forgery detail. Defendant offered to fill it out, he was not in custody at the time, he was not under arrest, nor was he a suspect on a criminal charge; he filled the card out voluntarily.

On October 23, 1963, Norman Fisher, a friend of Mrs. Harrell, gave her a check for $128 purportedly signed by Carl Gordon payable to defendant and endorsed by defendant. Mr. Fisher told her that defendant gave him the check. The check was deposited and came back. Carl Gordon did not sign the check nor did he give anyone permission to sign. Defendant worked on Mr. Gordon's books.

On October 23 defendant gave William Otto, a mechanic, two $51 checks payable to defendant, purportedly signed by J. Mortimer Casper. Defendant endorsed the checks and he gave defendant cash.

On December 23 defendant gave a $129 check payable to deSilva and Company, signed by defendant as maker, in return for merchandise. The check was returned marked "insufficient—account closed."

Detective Smith was unable to find any Carl Gordon other than the one he was already acquainted with, nor was he able to find anyone named J. Mortimer Casper or Lasper.

An auditor for Security First National Bank found no checking account for William Bryant Mason. An operations

officer for the United California Bank found no credit arrangement for J. Mortimer Casper, or Lasper, and found no arrangement for honoring the check of Carl Gordon.

William Bowman, a handwriting expert, formed the opinion that the handwriting on all four checks was the same as the endorsement of William Bryant Mason, and the same as the signature exemplar card.

Defense counsel, and defendant in his in pro. per. brief, assign numerous errors.

## I

Defendant's counsel asserts that there was an improper waiver of counsel because the court failed to inquire into the matter of defendant representing himself. The record reveals that the court made an inquiry, asking the defendant if he was appearing without counsel. When defendant said "yes" the court asked defendant if he would like to have the public defender represent him. The defendant said, "No, I would not, your Honor." Then the court again asked defendant if he refused the public defender, and defendant again refused. The total interrogation was brief and it shows no effort on the part of the trial court to ascertain either that defendant was aware of the problems that he would face, or that defendant was capable of self-representation.[1] On the face of that record, it would appear that the trial court had

---

[1] "THE COURT: . . . Mr. Mason, do you wish to relieve Mr. Harry Weiss' firm from responsibility of representing you and you want to represent yourself?

"THE DEFENDANT: Yes, I do, sir.

"THE COURT: You don't want the services of the Public Defender?

"THE DEFENDANT: No, I do not, sir.

"THE COURT: Very well. Then, the Court will allow Mr. Harry Weiss to withdraw, if that is your wish.

"THE DEFENDANT: Yes. Well, you see, your Honor, I filed in the Federal District Court in Los Angeles——

"THE COURT: Well, that doesn't make any difference.

"MR. KLYNN: Just answer the Judge's questions. That is to both——

"THE DEFENDANT: Yes.

"MR. KLYNN: That is to both cases?

"THE DEFENDANT: Yes, it is, sir.

"THE COURT: You wish to represent yourself as to both cases?

"THE DEFENDANT: Yes, I do, sir.

"THE COURT: And you want to have them relieved from the responsibility of representing you, and you don't want the Public Defender or any other lawyer to represent you here in these proceedings?

"THE DEFENDANT: No, not at this time, sir.

"THE COURT: You want to represent yourself?

"THE DEFENDANT: Yes, I do, sir.

"THE COURT: All right, we will allow counsel to withdraw, then."

not fulfilled its duty and that the waiver was ineffective.[2] However, we now have before us the reporter's transcript of the trial, together with numerous petitions and motions filed by defendant *in propria persona* in this court and in the Supreme Court, as well as in the federal proceedings herein-after discussed. From these documents, it seems clear that defendant was, in fact, aware of the nature of the proceedings in which he was involved and that he was as capable as any layman is likely to be of representing himself. It follows that the error in not conducting a full inquiry was not prejudicial and that we now know that the waiver of counsel was freely and intelligently made.

## II

Defendant contends that the prior offenses were not prop-erly before the jury and that, in any event, they were not properly presented to the jury.

Since defendant had denied the priors as alleged, the entire information, including the allegations with reference to prior offenses may properly be read to the jury (Pen. Code, § 1093), and the issue raised by the denial must be submitted to and determined by the jury. (*People* v. *Hoerler* (1962) 208 Cal.App.2d 402 [25 Cal.Rptr. 209]; *People* v. *Kingsbury* (1945) 70 Cal.App.2d 128 [160 P.2d 587].)

However, the trial court, in performing its duty of reading the information to the jury, after reading the four charging counts, read to the jury only those portions of the information relating to two of the three alleged priors—namely alleged convictions on September 11, 1951, and on March 24, 1958; an alleged conviction on March 31, 1956, was not then mentioned. Near the end of the trial the deputy district attorney informed the court that two of the three priors alleged in the information were, actually, misdemean-ors and not felonies. The two priors mistakenly pleaded were the first two—the alleged conviction on September 11, 1951, of which the jury had theretofore been advised, and the alleged conviction on March 31, 1956, of which the jury had not theretofore been advised. The trial court thereupon instructed the jury that it was to consider only the alleged 1958 prior. That instruction was in the following terms:

"THE COURT: Ladies and gentlemen of the jury, the Court wishes to advise you that the defendant in the Information before the Court has been charged with the prior conviction of

---

[2]For a recent discussion of the procedure appropriate in determining the issue of intelligent waiver of the right to counsel, consult *People* v. *Addison* (1967) 256 Cal.App.2d 18 [63 Cal.Rptr. 626].

three separate felonies and insofar as the evidence is now concerned, you are only to pass upon whether or not he has been convicted of the one felony under date of March the 24th, 1958, the Court having granted the defendant's motion to dismiss the charges as to the prior—two prior felony convictions, the one of September, 1951, and the one of the 31st of March, 1956.

"So you're to only pass upon the question of his conviction under date of the 24th of March, 1958."

It is argued that the confusion over the alleged priors was prejudicial. We do not agree. While the jury might well have been puzzled by the reference at the close of the trial to a 1956 conviction not previously brought to its attention, still it was told specifically that the only issue before it was that relating to the 1958 conviction. The verdict form submitted related only to one prior and the verdict was in that form. We do not think that the jury was actually confused as to the issue finally submitted to it.

### III

In addition to proper instructions on the duty of the jury to pass on the truth of the allegation of the prior felony, the trial court instructed it (in accordance with CALJIC No. 54-b), as follows: "The fact that a witness had been convicted of a felony, if such be a fact, may be considered by you [for only one purpose, namely,] in judging the credibility of that witness. The fact of such a conviction does not necessarily destroy or impair the witness's credibility, and it does not raise a presumption that the witness has testified falsely. It is simply one of the circumstances that you are to take into consideration in weighing the testimony of such a witness." No other instruction on the effect of a prior felony conviction was given nor, so far as the record discloses, requested.

It is now argued that the court should also have given CALJIC No. 33, or a similar instruction, to the effect that prior offenses were only to be considered by them for the limited purpose of showing identity, common scheme or design, or motive. Not only is defendant foreclosed from raising the point on appeal by reason of his failure to request such an instruction in the trial court, but we can see no basis for it in the record. All that we know of the prior offense is that it was for forgery. There is nothing in the record that would have suggested that that conviction shed any light on defendant's guilt of the offenses for which he was on trial.

38

While, under these circumstances, it would have been proper for the trial court, had it been requested so to do, to have instructed the jury, in terms, that they should not consider the alleged prior at all on the issue of guilt, we can see no prejudice from the failure of the trial court to give such instruction on its own motion. The jury was told that they could consider the conviction only as affecting defendant's credibility. Since he had not testified, there was no credibility to judge. Accordingly, the instructions, as given, in effect, told the jury that they should not consider the prior conviction at all when determining the issue of guilt. No prejudice resulted.

IV

Defendant contends that the trial court erroneously refused to listen to his argument that members of his race (Negro) were discriminated against in choosing the jury and the jury panel. ■ It is, of course, well settled that it is not necessary to have on the jury members of the same race as the defendant. (*People* v. *Hernandez* (1950) 100 Cal.App.2d 136 [223 P.2d 76].) ■ Defendant first attempted to challenge the jury panel as such after the jury had been chosen and sworn. The challenge came too late. (Pen. Code, § 1060.) However, the trial court heard defendant and denied the challenge on the merits, pointing out that, of the court's own knowledge, there was no evidence of discriminatory peremptory challenges. Having once heard defendant on the matter, the trial court was entirely within proper limits in refusing to allow an even later renewal at the time of allocution.

V

■ ■ Defendant objects to the use against him of the handwriting exemplar obtained in the manner set forth. The record shows clearly that the defendant had volunteered to give the exemplar; he cannot now object that his offer was accepted.[3]

VI

■ Defendant contends that he had earlier been discharged on the same charges, had been re-arrested in open court and the present proceeding instituted. These facts, if true, do not appear in the record before us except by way of a brief reference from defendant at the opening of the trial. We

[3]In any case, the taking of a handwriting exemplar does not fall within any constitutional prohibition. (*People* v. *Graves* (1966) 64 Cal.2d 208 [49 Cal.Rptr. 386, 411 P.2d 114].)

see no error. A dismissal at preliminary examination does not bar a new filing, and even a dismissal in the superior court after a motion made under section 995 of the Penal Code does not prevent the filing of a new information. (Pen. Code, § 999.)

### VII

Defendant asserts that he was imprisoned without bail from September 2, 1965, to September 16, 1965. According to the clerk's transcript, bail was forfeited and then reinstated. The court ordered that when $500 is paid, the bail forfeit would be set aside and bail is exonerated. The transcript shows that bail was set at $3,300 on May 24, 1965, and again on June 1, 1965. We see nothing wrong with this procedure.

### VIII

Defendant charges that the evidence is insufficient to support the verdict. The elements of Penal Code, section 470 and Penal Code, section 476 were present and proven. Without repeating all the evidence of the facts stated above, the evidence clearly supports a finding of guilt.

### IX

Defendant argues that the court sustained an objection to a question by defendant that attempted to impeach the memory of the victim. The trial court has discretionary power to limit the scope of questions designed to test the memory of the witness (see *Kimball* v. *Northern Elec. Co.* (1911) 159 Cal. 225, 229 [113 P. 156]), and we find no abuse of that discretion.

### X

Defendant objects that the court made a comment concerning some evidence defendant was bringing out about a scar on his face, and that the judge ruined defendant's case by saying the scar was of no importance. It is proper for the judge to comment on the credibility of witnesses and on the evidence. (See *People* v. *Friend* (1958) 50 Cal.2d 570, 576 [327 P.2d 97].)

### XI

Defendant asserts that it was error to instruct as follows: ''It is a constitutional right of a defendant in a criminal trial that he may not be compelled to testify. Thus the decision as to whether he should testify is left to the defendant, acting with the advice and assistance of his attorney. You must not draw any inference of guilt from the fact

that he does not testify, nor should this fact be discussed by you or enter into your deliberations in any way."

This instruction was given by the trial court at the request of the prosecution; the record does not disclose any objection by defendant at that time or otherwise in the trial court. The giving of this instruction (CALJIC No. 51 (re-revised)) is not error where the defendant himself requests it. At the other extreme, we have held that it is error to give that instruction over the expressed objection of defendant. (*People* v. *Molano* (1967) 253 Cal.App.2d 841, 846, 847 [61 Cal. Rptr. 821].) But the cases are in conflict over the rule to be applied in cases, such as that at bench, where the instruction is neither requested by defendant nor expressly objected to by him. So far as we can determine, the matter has been considered in only five California cases. In *People* v. *Graham* (1967) 251 Cal.App.2d 513, 518-519 [59 Cal.Rptr. 577], defendant urged on appeal that it was error for the trial court not to give such an instruction *sua sponte*; the court did not determine the issue, holding that, even if error, it was not prejudicial in light of the strong evidence of guilt. *Graham* relied on *People* v. *Elliott* (1966) 241 Cal.App.2d 659 [50 Cal.Rptr. 757], which also had held that it was not prejudicial error not to instruct *sua sponte* where the evidence of guilt was strong. In *People* v. *Brown,* (1967) 253 Cal.App.2d 820, 830 [61 Cal.Rptr. 368] the trial court gave whether *sua sponte* or on the prosecution's own motion, the opinion does not state, a greatly modified form of CALJIC 51 (rev.), not materially different from the re-revised form given in this case. The court held that no error had occurred. In *People* v. *Horrigan* (1967) 253 Cal.App.2d 519, 521-523 [61 Cal. Rptr. 403], the issue, as in *Elliott* and in *Graham,* arose over a failure of the trial court to instruct *sua sponte.* However, that court did not place its affirmance on the lack of prejudice, but on the ground that it would have been error to have so instructed. In *People* v. *Northern* (1967) 256 Cal.App.2d 28, 30-31 [64 Cal.Rptr. 15], as in the case at bench, the trial court had given CALJIC 51 (re-revised) at the request of the prosecution. After noting the earlier cases above discussed, the court invoked the prejudicial error rule and declined to determine whether or not the giving of the instruction was itself error.

It will be noted that, of these five cases, three (*i.e., Elliott, Graham* and *Northern*) do not decide the issue before us, since they went off on the prejudicial error theory. *Brown* and

*Horrigan* seem to us to be in point (in spite of the verbal differences between the instruction in *Brown* and CALJIC 51 (re-revised) and squarely contra to each other).

We think, also, that *Brown* is irreconcilable with our own holding in *Molano*. Section 1176 of the Penal Code provides that where (as here) the instructions are in writing, ". . . the questions presented in such instructions . . . need not be excepted to . . ." and it has been held that, in light of this statutory provision, it is "improper" to note exceptions to the instructions as given. (*People* v. *Mitchell* (1925) 74 Cal. App. 164 [240 P. 36].) Under these circumstances, we conclude that it is immaterial whether or not defendant expressly (as in *Molano*) or impliedly (as here and in *Brown*) objects.

However, we need not decide the conflict here, since, in the case at bench, the error was not prejudicial. The evidence for the People was complete and persuasive. Beyond any reasonable doubt, the giving of the instruction added nothing to the case against defendant and it could not have prejudiced him.

### XII

 Defendant asserts that defendant's motion for pre-trial discovery was denied. Discovery may be denied for insufficiency of a showing of need. (See *People* v. *Cooper* (1960) 53 Cal.2d 755 [3 Cal.Rptr. 148, 349 P.2d 964].) No proper showing was made here.

### XIII

 Defendant's chief contention is that the trial court was without jurisdiction to proceed with the trial.

By two separate petitions, defendant had duly moved to remove the case to the federal court pursuant to section 1443 and 1446 of title 28 of the United States Code.[4] A hearing was held on his removal petitions, the federal court denied relief and ordered the cases remanded to the state court. Defendant duly filed notices of appeal from those orders.[5] When the case was called for trial, he brought these proceedings to the attention of the trial court and objected to the trial continuing. His contention was summarily rejected.

[4]Act of June 25, 1948, ch. 646, § 1443, 62 Stat. 938; Act of May 24, 1949, ch. 139, § 83, 63 Stat. 101.

[5]Pursuant to the provisions of section 459 of the Evidence Code, we have taken judicial notice of the federal proceedings hereinabove described.

It appears from certified copies of the records of the United States District Court for the Southern District of California, Central Division, and of the United States Court of Appeals for the Ninth Circuit, that

Although the matter is by no means free from doubt, we conclude that the pendency of the federal appeal did not, in and of itself, serve to oust the state court of jurisdiction to proceed with the trial.

Prior to 1964, orders of remand were not appealable, the remand order was final and it reinvested the state court with jurisdiction. But, in that year, the Civil Rights Act (Pub. L. 88-352), amended section 1447(d) of title 28, to give an express right of appeal from an order remanding a case that had been removed under section 1443.

Our research has disclosed four cases that bear on the problem before us, and they do so only tangentially. In *Rubenstein* v. *State of Texas* (5th Cir. 1965) 345 F.2d 916, defendant had been convicted in the state court; he removed a sanity hearing to the federal court and the district court remanded. Defendant appealed the remand order to the federal court of appeal and, in that court, sought a stay of the sanity hearing pending the determination of his appeal. The stay was denied on the merits, on the stated ground that the sanity hearing was an integral part of the appeal from the conviction properly then pending in the state appellate court. In *Board of Education* v. *City-Wide Committee for Integration* (2d Cir. 1965) 342 F.2d 284, the federal court of appeal had granted a stay of the state proceedings pending its own decision, but refused to extend that stay for the purpose of an application for certiorari to the Supreme Court. In *Congress of Racial Equality* v. *Town of Clinton* (5th Cir. 1964) 346 F.2d 911, the federal court of appeal granted a stay pending its determination of the appeal. In *Chestnut* v. *People of The State of New York* (2d Cir. 1966) 370 F.2d 1, the court of appeal had denied a stay order, but Mr. Justice Harlan, acting as Circuit Justice for that circuit, had granted one. All of these cases assume, but without expressly deciding, that the mere appeal from an order of remand did not automatically stay proceedings in the state court; had the assumption been otherwise, there would have been no need for the discussion, in those cases, of the propriety of a stay in each individual case.

---

defendant filed his Petitions for Removal in the district court on November 12, 1965, that the matters were ordered remanded on November 16, 1965, that defendant filed notices of appeal from the orders of remand on November 26, 1965, and that the appeals were pending in the court of appeals until they were dismissed by that court on November 24, 1967. The appeals, thus, were pending in the federal appellate court at all times during the trial of this case (which took place between January 10, 1966, and February 3, 1966) and they were still pending when this case was argued and submitted in this court on November 14, 1967.

It has long been the general rule that all doubts concerning removability should be resolved in favor of state court jurisdiction (*Universal Surety Co. v. Manhattan Fire & Marine Ins. Co.* (D.S.D. 1958) 157 F.Supp. 606), and it has been held that subsection (d) of section 1447, which makes orders of remand in non-civil rights cases not appealable, represented a basic policy against the prolongation of litigation. (*Application of Rosenthal-Block China Corp.* (2d Cir. 1960) 278 F.2d 713.) Of course, the 1964 amendment herein involved produced some possibility of such a prolongation but we are not convinced that the Congress intended that to occur automatically or other than by an express stay order from a federal court issued on a case-by-case basis. In fact, there is one significant matter which indicates otherwise. For many years, subsection (c) of section 1447 has provided as follows:

"If at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the [federal] district court shall remand the case, and may order the payment of just costs. A certified copy of the order of remand shall be mailed by its clerk to the clerk of the State court. *The State court may thereupon proceed with such case.*" (Italics added.) The Civil Rights Act of 1964, although amending subsection (d) of that same section so as to permit appeals from orders of remand in civil rights cases, did not amend subsection (c) and the emphasized words in that subsection remain in force. We take them at face value, subject to the power of higher federal courts to order a stay as in the cases above discussed.

We recognize that the legislative history of the 1964 provision does indicate that Congress was made aware that dilatory tactics might be utilized by this section of the Civil Rights Act. The Minority Report on the proposed Civil Rights Act of 1963, Committee on Judiciary Substitute for H.R. 7152,[6] warned that the appeal provision would nullify the jurisdiction of the state courts and would destroy the efficacy of the state courts. Many members of the House warned that this section of the Civil Rights Act would encourage dilatory tactics[7] and frustrate state laws, and the federal courts would retain jurisdiction during the entire period.[8] The Attorney

[6] U.S. Code Cong. & Admin. News (1964) p. 2435.

[7] George Meades (1964) U.S. Code Cong. & Admin. News, p. 2428.

[8] (1964) U.S. Code Cong. & Admin. News, p. 2478. Separate Minority Views of Hon. Richard H. Poff and Hon. William Cramer.

General thereafter refused to delete the section pertaining to appeal from a remand order in a civil rights case.[9] But nowhere can we find any statement by the proponents of the amendment that they agreed with the opposition. As Mr. Justice Douglas said in *Schwegmann Bros.* v. *Calvert Distillers Corp.* (1951) 341 U.S. 384, 394 [95 L.Ed. 1035, 1048, 71 S.Ct. 745, 750, 19 A.L.R.2d 1119, 1131], "The fears and doubts of the opposition are no authoritative guide to the construction of legislation. It is the sponsors that we look to when the meaning of statutory words is in doubt." The underlying policy of the 1964 amendment can be accomplished by securing from the federal court of appeal a stay order in those cases in which that court is convinced that the probability of a reversal is great enough to justify the delay in the state criminal trial which will result; in those cases where the removal petition was clearly frivolous, the federal court can withhold the stay and, thus, sustain the traditional policy against undue interference with the state process or an unnecessary delay in bringing criminal cases to trial.

## XIV

Defendant made several motions in the trial court for a "change of venue." He gave no reasons for a change of venue in the usual sense and the trial court's action was proper. (*People* v. *Duncan* (1960) 53 Cal.2d 803, 812 [3 Cal. Rptr. 351, 350 P.2d 103].) From the context in which these motions were made, however, we conclude that defendant was merely seeking, by use of different words, to accomplish the removal to the federal court. We have already considered and rejected that contention.

The judgment is affirmed; the appeal from the order denying a new trial is dismissed.

Files, P. J., and Jefferson, J., concurred.

A petition for a rehearing was denied March 5, 1968, and appellant's petition for a hearing by the Supreme Court was denied April 10, 1968.

[9] (1964) U.S.Code Cong. & Admin. News, p. 2482.