[Crim. No. 16056. Second Dist., Div. One. Nov. 19, 1969.]

THE PEOPLE, Plaintiff and Respondent, v.
NORMAN ARLEE MAUGH, Defendant and Appellant.

COUNSEL

Belan M. Wagner, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Mark Leicester, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

LILLIE, J.—Charged with a violation of section 288, Penal Code, and incest, the charges were reduced to, and defendant was found guilty of

annoying and molesting a child under the age of 18 (§ 647a, subd. (1), Pen. Code), a misdemeanor. On April 15, 1968, defendant was certified by the municipal court to the superior court for hearing to determine if he is a mentally disordered sex offender. On April 18, 1968, the superior court appointed Doctors Mace and Vogeler to examine defendant. A hearing was had on April 30, 1968, reports of the two examining psychiatrists were admitted in evidence, report of the probation officer was read and considered and Judge Ruffner committed defendant to Atascadero State Hospital for observation and diagnosis for a period not to exceed 90 days.

A month later defendant stated in writing he did not wish to remain at Atascadero State Hospital for treatment. Thereafter on June 25, 1968, the superintendent reported his diagnosis—"Personality pattern disturbance, cyclothymic personality, with sexual deviation, (incest and female pedophilia)," his opinion that defendant "is a mentally disordered sex offender, but he will not benefit by care or treatment in a state hospital and is a danger to the health and safety of others" and not amenable to hospital treatment, and his recommendation that he be returned to the criminal court and if charged with a misdemeanor committed to the Department of Mental Hygiene for an indeterminate period. Defendant was returned to the superior court which certified him to the municipal court which recertified him to the superior court to determine whether he is a mentally disordered sex offender. Thus, on August 5, 1968, Judge Ruffner ordered another examination and appointed Doctors Vogeler and Sheel to examine defendant. On September 6, 1968, a hearing was had; after considering the evidence,[1] Judge Willard found "that defendant is suffering from a mental defect, disease or disorder to such a degree that he is a danger and is predisposed to committing sexual offenses" but that he is amenable to and would benefit from hospital treatment, and ordered him committed to the Department of Mental Hygiene for placement at Atascadero State Hospital for an indeterminate period. Immediately defendant demanded a trial by jury; the jury found that defendant "is a mentally disordered sex offender and would not benefit by care and treatment in a state hospital." Motion for new trial was denied and Judge Willard ordered defendant be committed to the State Department of Mental Hygiene for an indeterminate period of placement with the Department of Corrections. He appeals from the order.

---

[1] Dr. Vogeler's report concluded that defendant "is a mentally disordered sex offender but not presently dangerous while also not likely to benefit from further treatment at Atascadero State Hospital." Dr. Sheel reported that defendant "continues to show evidence of a mental disorder and that he continues to be a danger to the health and safety of others and I feel therefore, that he is a mentally disordered sex offender within the meaning of the law. It is my feeling that since he is unwilling to be involved in treatment, he is not a suitable candidate for hospitalization at this time."

■ Appellant's claim that the probation report shows two prior felony convictions of grand theft auto, thus he was ineligible for probation and excluded from the operation of the mentally disordered sex offender law[2] (§ 5500.5, Welf. & Inst. Code)[3], and the court had no jurisdiction to determine that he is a mentally disordered sex offender is without merit. The record fails to show that he was convicted of two felonies and defendant knows that he was not. The entries in the probation report[4] do not show two grand theft auto felony convictions; they do show one grand theft on January 8, 1950, not therein designated a felony, and therefor defendant was in custody of two separate agencies, the juvenile court having placed him first in the Senior Forestry Camp, later with the Clarement Youth Authority at Preston Reformatory from which he was subsequently paroled. It is clear from the record that defendant was convicted of only one grand theft auto, then as a juvenile. Information obtained by Dr. Vogeler from defendant himself reveals only one conviction and that "while a juvenile he was arrested for car theft and served a sentence at the Preston Reformatory after running away from the youth authority camp." A juvenile conviction may be either a misdemeanor or felony depending on the type of sentence imposed; when the court has discretion to impose a sentence either in the county jail or in state prison the offense is deemed a misdemeanor (§ 17, Pen. Code). Grand theft (§ 487, Pen. Code) is punishable by imprisonment either in the county jail or the state prison (§ 489, Pen. Code), thus is deemed to be a misdemeanor.

■ Citing *People* v. *Washington,* 269 Cal.App.2d 246 [74 Cal. Rptr. 823], appellant claims it was reversible error for two judges—Judge Ruffner and Judge Willard—to hear the evidence. Upon defendant's return from the state hospital and recertification to the superior court, Judge Ruffner set the matter for hearing and appointed the public defender and two psychiatrists; he heard no evidence. Thereafter, the hearing was

---

[2]Effective July 1, 1969, Welfare and Institutions Code, sections 5500-5522 were repealed. The subject matter is now covered by section 6300 et seq., Welfare and Institutions Code.

[3]Section 5500.5, Welfare and Institutions Code, provides "This article shall not apply to any person sentenced to death nor to any person ineligible for probation under the Penal Code. . . ."

[4]

| DATE | AGENCY | CHARGE | DISPOSITION |
|---|---|---|---|
| 3-6-47 | Hawthorn PD | Susp. 288 PC | Juv. Prob. on chg. of 311.5 PC |
| 1-8-50 | Hawthorn PD | GTA & 503 | Pet. req. in J. court 1-3-50: Placed in Senior Forestry Camp Case cont. 10-30-50 |
| 4-22-50 | Needles PD | Susp. GTA | Rel to Claremont P.D. |
| 7-7-50 | CYA Preston | GTA | Paroled 12-50 |

[a]Advance Report Citation: 269 A.C.A. 253.

had before Judge Willard who made a determination and ordered defendant's commitment to Atascadero. However, dissatisfied with this, defendant immediately requested a jury trial and again Judge Willard presided at the trial and made the subsequent order for an indeterminate period of placement with the Department of Corrections. In each instance the evidence was heard by the same judge who made the order of commitment. This is not the situation condemned in· *People* v. *Washington,* 269 Cal. App.2d 246 [74 Cal.Rptr. 823], in which the evidence was heard by one judge sitting in a civil department and the commitment was made by another sitting in a criminal court (p. 249).

■ ■ Appellant claims that those sections of the Welfare and Institutions Code relating to indeterminate commitment are unconstitutional as violative of the Fourteenth Amendment in that the right to·trial by jury is granted to one class of persons, i.e., those who are committed to a state· hospital, but make no such provision for those committed to the Department of Mental Hygiene. Having asked for and received a trial by jury, the rule permitting a person to attack a statute only on constitutional grounds applicable to himself precludes appellant from raising this point. (*In re Davis,* 242 Cal.App.2d 645, 666 [51 Cal.Rptr. 702].) "The rule is well established . . . that one will not be heard to attack a statute on grounds that are not shown to be applicable to himself and that a court will not consider every conceivable situation which might arise under the language of the statute and will not consider the question of constitutionality with reference to hypothetical situations. [Citations.] Petitioner has not shown that the statute is being invoked against him in the·aspects or under the circumstances which he suggests, and hence may not be heard to complain." (*In re Cregler,* 56 Cal.2d 308, 313 [14 Cal.Rptr. 289, 363 P.2d 305]; *People* v. *Buese,* 220 Cal.App.2d 802, 806 [34 Cal.Rptr. 102].)

■ Appellant argues that on April 30, 1968, Judge Ruffner made the finding he "is a mentally disordered sex offender" instead of finding "there is sufficient cause to believe that the person is a mentally disordered sex offender" (§ 5512, Welf. & Inst. Code) thus the court's determination was in·excess of its jurisdiction, citing *People* v. *Good,* 223 Cal.App.2d 298, 301 [35 Cal.Rptr. 825],[5] and "[t]he vice of this finding is that no one can really determine how much it affected all subsequent proceedings." Under the circumstances herein, this alone hardly sustains his burden to establish

---

[5]In *People* v. *Good,* 223 Cal.App.2d 298 [35 Cal.Rptr. 825], a similar preliminary order was made and the court modified the same to conform to section 5512, Welfare and Institutions Code (p. 302); in that case appeal was taken directly from the order.

that the error was prejudicial and we have found nothing in the record from which it would appear reasonably probable that ultimately a more favorable result would have been reached had the order been correctly worded. (*People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243]; art. VI, § 13, Cal. Const.)

In a late closing brief appellant claims he was denied due process for failure of the court-appointed psychiatrists to testify at the April 30 hearing which rendered void the order committing him to Atascadero for a period not to exceed 90 days. Due process in proceedings for commitment of a convicted person as a mentally disordered sex offender requires that he be present with counsel, have an opportunity to be heard, be confronted with witnesses against him and have the right to cross-examine and offer evidence of his own (*Specht* v. *Patterson,* 386 U.S. 605, 610 [18 L.Ed.2d 326, 330, 87 S.Ct. 1209]); the same applies to temporary commitment for observation. (*People* v. *Succop,* 67 Cal.2d 785, 789 [63 Cal.Rptr. 569, 433 P.2d 473].) A waiver of any such requirements must be express, and will not be implied. (*In re Cruz,* 62 Cal.2d 307, 312-313 [42 Cal.Rptr. 220, 398 P.2d 412] [commitment for narcotic addiction]; *In re Jones,* 61 Cal.2d 325, 329-330 [38 Cal.Rptr. 509, 392 P.2d 269] [commitment for narcotic addiction]; *In re Kramer,* 257 Cal.App.2d 287, 289-291 [64 Cal.Rptr. 686] [mentally disordered sex offender proceeding].) *People* v. *Thomas,* 260 Cal.App.2d 196 [67 Cal.Rptr. 234], heavily relied upon by appellant, held that an order committing defendant to Atascadero for a period not to exceed 90 days is void if the prescribed procedural steps are not followed, including the giving of testimony by the psychiatrists. "While that latter requirement may be waived, the waiver must be express and will not be implied." (P. 201.) In *Thomas* there was no waiver by stipulation or otherwise and the transcript revealed that although two psychiatrists were sworn they did not testify, the hearing having been immediately dispensed with. That is not the situation here. While the court-appointed psychiatrists were not examined at the hearing there was an express waiver by stipulation of counsel. On April 18, 1968, upon defendant's certification from the municipal court (§ 5501.5, Welf. & Inst. Code) Judge Ruffner advised defendant of his legal rights in mentally disordered sex offender proceedings, appointed the public defender to represent him, set a date for the hearing and appointed two psychiatrists to examine him. The minute order of April 18, 1968, recites, "Respective counsel stipulate that the doctors are duly qualified psychiatrists, that their reports may be received in evidence subject to cross examination, and that the doctors need not appear as witnesses at the hearing provided their reports are received at least 48 hours prior to the hearing, or unless counsel have requested their appearance at least 24 hours prior to the hearing."

Appellant complains that there was no waiver on his part because he did not personally join in the foregoing stipulation. ■ Mentally disordered sex offender proceedings are similar to criminal prosecutions, and the standards of due process applicable to the latter are equally applicable to the former. (*Specht* v. *Patterson,* 386 U.S. 605, 609 [18 L.Ed.2d 326, 329, 87 S.Ct. 1209].) ■ Thus, inasmuch as counsel in a criminal case has the authority to stipulate to the determination of an issue solely on the basis of a written record in lieu of oral testimony and defendant need not himself expressly enter into the stipulation or otherwise expressly waive his rights, and the stipulation is binding when entered into by his counsel while defendant is present and without objection by him (*People* v. *Foster,* 67 Cal.2d 604, 606 [63 Cal.Rptr. 288, 432 P.2d 976] [sanity issue]), it would seem that the authority of counsel to enter into stipulations under the same circumstances applies as well to commitment proceedings. (See *People* v. *Succop,* 67 Cal.2d 785, 789 [63 Cal.Rptr. 569, 433 P.2d 473].)[6] ■ Absent in the record is any suggestion that defendant objected to or asked to be relieved of the stipulation which was entered into in his presence, that either he or his counsel ever requested the appearance of the psychiatrists at the hearing or that at any time he complained to the court that they did not appear and testify. Under the terms of the stipulation defense counsel could have requested the appearance of the psychiatrists after reading their reports but he did not do so and his reason for submitting the matter on the doctors' reports is apparent—one psychiatrist recommended observation in the state hospital, the other did not and evidence of defendant's danger to others was extensive. Counsel no doubt felt that the reports would better serve his client than the doctors' testimony detailed at a full-blown hearing. Our examination of the procedures followed discloses that defendant was accorded full procedural due process.

■ Likewise, appellant says his certification by the superior court to the municipal court upon his return from Atascadero is in excess of the court's jurisdiction bcause in its order it purported to act under section 5518, Welfare and Institutions Code. While it appears that the superior court did incorrectly cite section 5518 as its authority, the court's action in returning defendant to the municipal court for further proceedings was nevertheless proper. The superintendent had reported to it that defendant is a mentally disordered sex offender who would not benefit from care and treatment in a state hospital. "When such a report is made, the sexual

---

[6]"The court-appointed psychiatrists did not testify (see Welf. & Inst. Code, §§ 5505, 5506), and defendant was not afforded any opportunity to produce evidence in his own behalf (see Welf. & Inst. Code, §§ 5503, 5508). The parties did not stipulate that the question be submitted on the reports of the court-appointed psychiatrists and instead defendant made it clear that he desired a hearing." (*People* v. *Succop,* 67 Cal.2d 785, 789 [63 Cal.Rptr. 569, 433 P.2d 473].)

psychopathy proceedings are at an end and the specific direction of the code is that the person is returned to the court in which he was convicted. . . ." (*People* v. *Bachman,* 130 Cal.App.2d 445, 449 [279 P.2d 77]; *People* v. *Schaletzke,* 239 Cal.App.2d 881, 886 [49 Cal.Rptr. 275].) Thus, defendant was returned to the superior court which, in accord with the provisions of section 5512, properly certified him to the municipal court which, satisfied that defendant is a mentally disordered sex offender who would not benefit by care or treatment in a state hospital and is a danger to the health and safety of others, recertified him to the superior court where ultimately defendant had a jury trial. Appellant says the certification order assumes that he had already been committed to the Department of Mental Hygiene as a mentally disordered sex offender under section 5517, subdivision (b), has not recovered and is still a danger, and but for this language the municipal court could very well have sentenced him on the misdemeanor charge and that would have ended the matter. Not as speculative is the answer that after reading the entire file, including the psychiatrists' reports, probation report and report and recommendation of the superintendent at Atascadero, the municipal court could have done nothing other than recertify defendant to the superior court.

Over defendant's objection the jury was given the question whether he would benefit from hospital treatment and it found that he would not. Relying on a brief comment in a footnote in *People* v. *Washington,* 269 Cal.App.2d 246 [47 Cal.Rptr. 823][7], he claims this was error for the only issue was whether he is a mentally disordered sex offender, the prejudice occurring when he was placed with the Department of Corrections instead of Atascadero State Hospital. On the first hearing after defendant's recertification to the superior court Judge Willard found defendant to be a sexual psychopath but amenable to and would benefit from hospital treatment, and ordered him placed in Atascadero State Hospital for an indeterminate period. Defendant was dissatisfied with this finding and order and demanded a jury. The jury also found him to be a mentally disordered sex offender but that he would not benefit by treatment in a state hospital. Appellant seeks to avoid the commitment by resort to the argument that the issue whether he would benefit from hospital treatment having been submitted to the jury erroneously, he is entitled to take advantage of Judge Willard's previous finding that he would benefit from hospital treatment, the fallacy of which is that when he was granted a jury trial the issues were determined anew. Section 5512, Welfare and Institu-

---

[7]This question was not before the court in *People* v. *Washington,* 269 Cal.App.2d 246 [74 Cal.Rptr. 823]. See page 252, footnote 3.

tions Code clearly authorizes the superior court to make a finding on the issue of whether he would benefit by care or treatment in a state hospital. Respondent claims that a reasonable interpretation of this section would also permit a jury, a proper finder of fact, to make the same finding if the trial is by jury.

Even if submission of the issue to the jury was error, it was not prejudicial for the record shows that subsequent to the jury verdict the judge did in fact make an independent finding that defendant would not benefit by hospital treatment, and his subsequent order of commitment was based thereon. Judge Willard's finding and commitment order are based on the evidence that all of the doctors agreed that defendant is a mentally disordered sex offender, is a danger to the health and safety of others, does not have the full capacity of controlling his abnormal desires toward young girls and is very likely to repeat a similar offense, denies he has a sexual problem, does not wish and is not interested in treatment at Atascadero State Hospital, will not benefit from hospital treatment and is not amenable and should not be returned thereto. Thus, the jury's finding in accordance with the foregoing could hardly have been prejudicial. While prior to the jury trial Judge Willard found defendant would benefit from hospital treatment it is apparent from his comments on the motion for new trial that after hearing the testimony of the doctors and other witnesses on the jury trial he changed his mind. He readily admitted that at first he gave defendant "a break," but that after listening to the testimony adduced at the jury trial he, too, "came to the conclusion that [defendant] at this time would not benefit by treatment in a state hospital."[8]

The order is affirmed.

Wood, P. J., and Thompson, J., concurred.

---

[8]The court continued: "Very frankly, I had a feeling that if he had gotten on this witness stand and said, 'I want to go back. I'll cooperate. I think I have a problem. I'll work with you people,' that we would have had a unanimous opinion of all five doctors that he would benefit and I would have followed that opinion. One after another got on the stand here and said, 'He doesn't recognize he has a problem. He isn't interested in the program. He isn't going to benefit.' and I don't see that there was anything on which—I don't see there was any evidence to the contrary and I don't know how in good conscience I could make a finding to the contrary.

"And, therefore, in the event that the correct procedure would be for the Judge to make the determination, . . . I would make the determination of no benefit, after having listened to the uncontradicted evidence that there was no benefit. . . . So under the circumstances I can't see that there was any error committed. If there was error, I don't think it was prejudicial error or that it would have resulted in any different ultimate result."