[Crim. No. 19692. Second Dist., Div. Five. Oct. 12, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
NEIL TOWNSEND, Defendant and Appellant.

**COUNSEL**

Kathleen Kirkland, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and William S. Abbey, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**REPPY, J.**—Defendant was charged by information with assault by means of force likely to produce great bodily injury. (Pen. Code, § 245.) He pleaded not guilty. Two physicians were appointed to represent defendant pursuant to section 730 of the Evidence Code.[1] A jury found him guilty as charged. Criminal proceedings were adjourned pending proceedings under section 6300 et seq. of the Welfare and Institutions Code. The section

[1] No insanity or diminished capacity defense was raised, however.

6300 matter was submitted on the reports of three examining physicians. All of the reports indicated that defendant was a mentally disordered sex offender.[2] The court found defendant to be a probable mentally disordered sex offender.[3] Defendant was ordered committed to Atascadero State Hospital for an indeterminate period. Criminal proceedings were suspended during the term of defendant's commitment, to be resumed upon his release. He appeals from the judgment (order of commitment). ■ Since this matter came on calendar we have been advised by the Attorney General that "[f]ollowing [his] . . . commitment . . . as a mentally disordered sex offender . . . [defendant] was returned to the superior court for further proceedings under Welfare and Institutions Code sections 6325(b) and 6326 [;]" and that "[c]riminal proceedings were resumed and . . . the [trial] court denied [defendant] probation and sentenced him to the State Prison on the valid criminal conviction." Defendant has sufficient interest in his status of being or not being an adjudged mentally disordered sex offender as to preclude the later criminal department disposition from rendering the sex offender issue moot. (See *People* v. *Succop,* 67 Cal.2d 785, 789-790 [63 Cal.Rptr. 569, 433 P.2d 473].)

Janet Draine and defendant were both employed by the Lone Ranger Restaurant in Santa Monica. Miss Draine had never spoken to defendant prior to July 7, 1970. On that date she went into an upstairs storage area at the restaurant to put on a shirt. Defendant was there. He grabbed her by the arm and began beating her over the head with an ax handle, one end of which was covered with polyester foam. Miss Draine began screaming. Defendant swung the ax handle over his head and down onto Miss Draine's head. The blows were not painful because defendant struck Miss Draine with the padded end of the club. They were sufficiently strong, however, to stun her, swing her about the room, and knock her to the floor. After knocking her to the floor, defendant began choking Miss Draine with both hands, applying hard pressure to her throat. The choking was painful. It caused Miss Draine to black out for a few seconds. As a result of defendant's attack, Miss Draine suffered bruises on her forehead and neck, cuts and scratches on her hand and the back of her arm, and soreness in one hand to the extent of making it difficult to open and bend the hand for several days. It was also difficult for her to talk for a few days.

---

[2]Pursuant to rule 12(a) of the California Rules of Court we caused the superior court file to be lodged with this court for the purpose of examining the doctors' reports.

[3]Section 6316 of the Welfare and Institutions Code, as amended effective November 23, 1970, makes the use of the word "probable" in the court's finding improper. In view of our disposition of the matter the court will have an opportunity to make a proper finding.

David Rambow, the manager of the restaurant, heard screams and scuffling sounds coming from the storage room. He ran there and saw Miss Draine on the floor with defendant bending over her. When defendant saw Rambow he got up and went to another part of the storage room. Rambow fired defendant, and he left.

Elio Gagliano was a forensic pathologist employed as a medical examiner for the Los Angeles County coroner. He had examined the club which defendant had used to strike Miss Draine. He formed the opinion that a blow to the head with the club would cause great bodily injury if wielded with sufficient force. Dr. Gagliano also testified that it was possible to cause injury or death by exerting pressure with the hands on the throat of another person. The doctor had not talked to Miss Draine and did not know how much force had been used on her.

■ On this appeal defendant contends that the evidence was insufficient to sustain the verdict because it failed to establish either that defendant intended to injure Miss Draine[4] or that the force used was likely to produce great bodily harm. He bases this contention on the fact that he used the padded end of the club to strike Miss Draine; on her testimony that the blows were not painful; and on her testimony that she was able to scream while defendant was choking her. Defendant has thus focused only on those aspects of the evidence favorable to his position. He is, in effect, asking this court to reweigh the evidence, which, of course, we cannot do. There is ample evidence, as set forth above, to sustain the verdict. (*People* v. *Mosher,* 1 Cal.3d 379, 395 [82 Cal.Rptr. 379, 461 P.2d 659].)

■ Defendant next contends that the court erred in giving the jury the following *sua sponte* instruction (CALJIC No. 2.61): "In deciding whether or not to testify, the defendant may choose to rely on the state of the evidence and upon the failure, if any, of the People to prove every essential element of the charge against him, and no lack of testimony on defendant's part will supply a failure of proof by the People so as to support by *itself* a finding against him on any such essential element." (Italics added.) No objection was raised below to the giving of the instruction.

In *People* v. *Brown,* 253 Cal.App.2d 820, 830 [61 Cal.Rptr. 368],[5] this reviewing court approved the following instruction: " 'It is a constitutional

---

[4]The jurors were instructed that in order to convict defendant of assault with force likely to produce great bodily injury they had to find that he acted with the specific intent to commit an assault. Defendant is not complaining about the instruction, which appears adequate in light of *People* v. *Rocha,* 3 Cal.3d 893, 898-899 [92 Cal.Rptr. 172, 479 P.2d 372], but only about the sufficiency of the evidence.

[5]*People* v. *Mason,* 259 Cal.App.2d 30, 39-41 [66 Cal.Rptr. 601], points up an apparent conflict between *Brown, supra,* and *People* v. *Horrigan,* 253 Cal.App.2d 519,

right of a defendant in a criminal trial that he may not be compelled to testify. Thus, whether or not he does testify rests entirely in his own decision. You are not to draw *any inference* against the D[efendant] in this case because of the fact that he elected not to testify.

'In deciding whether or not to testify, the defendant may choose to rely on the state of the evidence, and upon the failure, if any, of the People to prove every essential element of the charge against him, and no lack of testimony on defendant's part will supply a failure of proof by the People.' " (Italics added.)

The first paragraph of the above instruction is CALJIC No. 2.60. The second paragraph appears to be CALJIC No. 2.61, omitting the words "by itself."

In *People* v. *Brady,* 275 Cal.App.2d 984, 989-992 [80 Cal.Rptr. 418], the court approved the giving of an instruction similar in all essential respects to the first paragraph of the instruction given in *Brown, supra,* whether given at the request of the prosecution, or of the defendant, or on the court's own motion.[6]

The instruction given herein, however, differs significantly from those approved in *Brown, supra,* and *Brady, supra.* It fails to advise the jury that defendant has a constitutional right not to testify and that *no* inferences may be drawn from such failure. More importantly, having drawn attention to the fact that defendant failed to testify, the instruction given herein, by stating that lack of testimony by defendant will not supply a failure of proof by the People so as to support "by itself" a finding against defendant, suggests that such failure to testify may be considered in assessing guilt along with other unspecified factors presented by either side. The instruction thus violates *Griffin* v. *California,* 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229], and it was error to give it as framed.

The comment to CALJIC No. 2.61 indicates that the instruction should be given if requested by defendant. We believe that it should not be given on the court's own motion except in conjunction with CALJIC No. 2.60.[7] If

521-523 [61 Cal.Rptr. 403], and *People* v. *Molano,* 253 Cal.App.2d 841, 846-847 [61 Cal.Rptr. 821, 18 A.L.R.3d 1328], on the question of whether a defendant must object to the instruction being given to later claim error. But see *People* v. *Gardner,* 71 Cal.2d 843, 852 [79 Cal.Rptr. 743, 457 P.2d 575], and *People* v. *Brady, infra,* 275 Cal.App.2d 984, 989-992. The point is not involved in the instant case.

[6]Compare *People* v. *Ham,* 7 Cal.App.3d 768, 778 [86 Cal.Rptr. 906], which appears to be in conflict with the reasoning of *People* v. *Brady, supra;* see also *People* v. *Cooper,* 10 Cal.App.3d 96, 104-106 [88 Cal.Rptr. 919].

[7]We deem it proper for the court to give CALJIC No. 2.60 *sua sponte* without also giving CALJIC No. 2.61.

CALJIC No. 2.61 is given at all, the words "by itself" should be stricken from it.

The nature of the offense involved and evidence adduced, however, convinces us beyond a reasonable doubt (*Chapman* v. *California,* 386 U.S. 18, 24 [17 L.Ed.2d 705, 710, 87 S.Ct. 824, 24 A.L.R.3d 1065], rehg. den. 386 U.S. 987 [18 L.Ed.2d 241, 87 S.Ct. 1283]) that no different result would have been reached absent the instruction. (*People* v. *Cooper, supra,* 10 Cal.App.3d 96, 106; *People* v. *Mason,* 259 Cal.App.2d 30 [66 Cal. Rptr. 601].)

■ We find a defect in the section 6300 proceedings which we cannot say is not prejudicial and which necessitates remanding the matter to the superior court. As noted, the mentally disordered sex offender proceedings, upon stipulation of counsel, were submitted on the reports of the examining physicians. No waiver of the right to confront and cross-examine the doctors was obtained from defendant. In *People* v. *Gallegos,* 4 Cal.App.3d 93, 96 [83 Cal.Rptr. 911], we considered the question of whether waiver of the right to confront examining physicians in a civil narcotic commitment proceeding had to be made personally by an alleged addict. In holding that waiver by counsel was sufficient we noted that "[s]ection 3107 of the Welfare and Institutions Code, dealing with waiver of an entire hearing, requires that the waiver be expressed in open court or in writing by the alleged addict. In contrast, section 3106, dealing with the method of receiving evidence from the physicians, provides that they shall testify unless their presence is waived and it is stipulated that the affidavits may be received in evidence. The requirement of the waiver being expressed in open court or in writing by the alleged addict is not included."

Section 6308 of the Welfare and Institutions Code dealing with psychiatric reports and testimony in mentally disordered sex offender proceedings provides: "Each psychiatrist so appointed shall file with the court a separate written report of the result of his examination, together with his conclusions and recommendations and his opinion as to whether or not the person would benefit by care and treatment in a state hospital. At the hearing each psychiatrist shall hear the testimony of all witnesses, and shall testify as to the result of his examination, and to any other pertinent facts within his knowledge, *unless the person upon the advice of counsel waives the presence of the psychiatrists and it is stipulated that their respective reports may be received in evidence."* (Italics added.)

The language with respect to waiver of the right of confrontation is thus much more closely akin to section 3107 of the Welfare and Institutions Ccde than it is to section 3106. The fact that it refers to "the person" and

contemplates·an action on his part after getting advice from his attorney negates a legislative intent that the attorney would make a waiver for his client.

Additionally, we noted in *Gallegos, supra*, that the commitment proceedings therein were civil from their inception. Here, however, although the mentally disordered sex offender proceedings themselves were civil in nature, they arose out of a criminal conviction. Furthermore, here, unlike the situation in *Gallegos,* there was no evidence outside of the physicians' reports on the issue before the court in the commitment proceeding. Submission on the physicians' reports was, therefore, tantamount to a concession that defendant was a mentally disordered sex offender.[8]

We find that a personal waiver by defendant of his right to confront and cross-examine the examining physicians was an essential prerequisite to a valid submission of the matter on the psychiatric reports. Such a waiver cannot be presumed from a silent record. (Cf. *In re Mosley,* 1 Cal.3d 913, 924 [83 Cal.Rptr. 809, 464 P.2d 473].)

The respondent refers to *People* v. *Maugh,* 1 Cal.App.3d 856 [82 Cal. Rptr. 147], and suggests that it sanctions an attorney waiver of the in-court testimony of the psychiatrists. However, *Maugh* was decided before *In re Mosley, supra,* 1 Cal.3d 913, and did not give consideration to the concept that the sense of the reports was such that the stipulation was a concession that defendant was a mentally disordered sex offender. Actually at the time of the stipulation in *Maugh* the reports were not yet in being and it could not then have been known that they would, as they apparently, ultimately did, conclude that the defendant was a mentally disordered sex offender.[9]

Moreover the stipulation related only to the procedural steps, then provided by the law, of a determination that there was cause to believe that the defendant was a mentally disordered sex offender and of a 90-day placement in a state hospital, with the actual adjudication as to whether or not he was such to await the study and diagnosis during the placement period.[10] Also in *Maugh,* under the terms of the pre-examination stipulation, the defendant upon seeing the reports could have requested the appearance of the psychiatrists. (1 Cal.App.3d at p. 864.) Furthermore there was reason

---

[8]See footnote 2, *ante.*

[9]The language of the Court of Appeal indicates that there was only a divergence of opinion as to whether the defendant should be observed in a state hospital.

[10]*Maugh* was governed by section 5512 of the Welfare and Institutions Code as to the preliminary placement and ultimate adjudication. Defendant herein was governed by section 6316 of the Welfare and Institutions Code which calls for an order of commitment at the conclusion of the hearing, eliminating the 90-day placement. (Stats. 1970, ch. 685, pp. 1313-1314, § 3; effective November 23, 1970.)

for defendant and his counsel not to want the psychiatrists present in person (a conflict between the doctors as to whether observation at the state hospital should be had).

For the foregoing reasons the cause is remanded to the superior court for the purpose of obtaining defendant's waiver of his right to confront and cross-examine the medical witnesses. In the event that defendant chooses not to waive those rights, the court should proceed to hearing in accordance with sections 6308 and 6314 of the Welfare and Institutions Code.

The criminal conviction is affirmed. The order committing defendant to the Department of Mental Hygiene is reversed and remanded as indicated.

Stephens, Acting P. J., and Aiso, J., concurred.

A petition for a rehearing was denied November 2, 1971, and respondent's petition for a hearing by the Supreme Court was denied December 9, 1971.