[No. A132148. First Dist., Div. Five. Oct. 16, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
SALVADOR BARROS, Defendant and Appellant.

## Counsel

Matthew A. Siroka, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Seth K. Schalit and Sharon R. Wooden, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BRUINIERS, J.**—Proposition 36[1] outlines " 'an alternative sentencing scheme' " for persons convicted of certain drug offenses and mandates probation in lieu of incarceration for most nonviolent drug offenders. (*People v. Canty* (2004) 32 Cal.4th 1266, 1275 [14 Cal.Rptr.3d 1, 90 P.3d 1168] (*Canty*); see Pen. Code, § 1210.1, subd. (a).)[2] This mandate does not apply, however, to a "defendant who, in addition to one or more nonviolent drug possession offenses, has been convicted in the same proceeding of a misdemeanor not related to the use of drugs or any felony." (§ 1210.1, subd. (b)(2) (hereafter, section 1210.1(b)(2)).) The issue presented here is the meaning of the "same proceeding" as that phrase is used in section 1210.1(b)(2).

In this case, Salvador Barros was initially charged in a single accusatory pleading with a misdemeanor violation of a protective order and felony possession of both methamphetamine and cocaine base. After arraignment, the trial court granted Barros's motion for severance of the charges based on improper joinder. Barros was later convicted by jury of the misdemeanor charge, and entered guilty pleas to felony drug offenses. At sentencing on the drug offenses before a different judge, the court denied Barros Proposition 36 probation on the basis that the misdemeanor and the drug offense convictions occurred in the "same proceeding" within the meaning of section 1210.1(b)(2).

We hold that convictions occur in the "same proceeding" if the underlying charges are properly joined in the same accusatory pleading under section 954.[3] Because the sentencing judge was constrained by the earlier ruling that the charges were not properly joined, Barros was entitled to Proposition 36 probation and, accordingly, we reverse.

---

[1] Proposition 36, an initiative approved by voters in November 2000, is codified at Penal Code sections 1210, 1210.1 and 3063.1 and Health and Safety Code section 11999.4 et seq.

[2] All statutory references are to the Penal Code unless otherwise noted. For reasons discussed *post*, we cite to the pre-2006 version of section 1210.1 (as amended by Stats. 2001, ch. 721, § 3, p. 5616) except as otherwise indicated.

[3] We refer here to the main clause of section 954, which limits the charges that can be charged in a single accusatory pleading: "An accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts, and if two or more accusatory pleadings are filed in such cases in the same court, the court may order them to be consolidated."

Section 954 also allows the court to sever properly joined charges for purposes of trial (discretionary severance): "[P]rovided, that the court in which a case is triable, in the interests of justice and for good cause shown, may in its discretion order that the different offenses or counts set forth in the accusatory pleading be tried separately or divided into two or more groups and each of said groups tried separately."

## I. Factual Background[4]

In 2009, a San Francisco Child Protective Services worker (D.C.) obtained a restraining order against Barros (Fam. Code, § 6218) after he brandished a firearm at her. The order required Barros to stay away from D.C. and her workplace at 170 Otis Street in San Francisco.

On June 14, 2010, Barros arrived at 170 Otis Street about 4:00 p.m. carrying a hammer in his belt and wearing a full face mask with openings only for his eyes. He said he was there to see D.C., and a guard denied him entry. Barros became angry, spoke profanely about D.C., and kicked the door as he left the building, almost breaking the glass. When he removed his mask outside the building, the guard recognized him and reported the incident to the police.[5]

Two days later, on June 16, 2010, police went to Barros's residential hotel to investigate the June 14 incident. Barros was in the lobby when the officers arrived and they saw him drop a piece of methamphetamine to the floor. They seized the drugs, arrested Barros, and during a subsequent search found crack cocaine in his pocket.

## II. Procedural Background

While the factual history of this matter is relatively straightforward, the procedural history is not. The defense and the prosecution both recognized from the outset that joinder of the charges would potentially disqualify Barros from receiving Proposition 36 probation, and each side maneuvered for strategic advantage on the issue. For example, the prosecutor originally brought charges against Barros sometime before October 27, 2010, but the misdemeanor charge was dismissed at an October preliminary hearing. Barros then offered "an open plea for probation" on the drug charges and sought release on his own recognizance, while the prosecution pressed for a prison sentence on the drug charges, citing the facts underlying the misdemeanor. Ultimately, the prosecutor dismissed the case and refiled all of the charges in a new accusatory pleading.

On October 27, 2010, Barros was charged by felony complaint with felony possession of cocaine base (Health & Saf. Code, § 11350, subd. (a)); felony possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)); and misdemeanor disobedience of a court restraining order (§ 273.6, subd. (a)). It was alleged that Barros had previously served a prison term for

---

[4] The following information is taken from Barros's November 2010 preliminary hearing.

[5] Most of the incident was captured on videotape.

domestic violence and that he did not remain free of a felony conviction for five years following the prison term (§ 667.5, subd. (b)). Following the November preliminary hearing, Barros was held to answer on the felony charges and the magistrate certified the misdemeanor. An information charging all three counts was filed on November 23.

On November 29, 2010, Barros moved to sever the misdemeanor and the drug charges. He argued the charges were improperly joined because the misdemeanor was "neither an alternative way to charge the drug possession, of the same class of offenses as the drug possession, nor connected together in commission in some way with the drug possession." Barros further argued that, "[e]ven if permissibly joined, the Court should exercise its discretion to sever the stay-away violation from the drug possession charges" pursuant to section 954. He expressly urged the court to sever the charges so that he would be eligible for Proposition 36 treatment: "Not to do so would reward the clear machinations of the prosecution to try to send defendant to prison for the facts underlying the misdemeanor charge."

In opposition, the prosecutor argued joinder was proper because the offenses were connected in their commission: "Offenses are 'connected together in their commission' where there is a common element of substantial importance in their commission. [Citations.] . . . [¶] Here the police investigation regarding the stay away violations connects the two offenses together. Without the violation of the stay away order from 170 Otis Street, the officers would have had no reason to visit [Barros's] home and see [him] drop the narcotics in plain view."[6] The prosecutor also argued (in briefing on a related motion) that, even if Barros did not fall within an express exception in the statute, he should be deemed ineligible because he was not the type of person who was intended to benefit from Proposition 36.

On December 16, 2010, Judge Haines granted Barros's motion to sever, ruling that the offenses were "*not connected*. One happens on day one, they're investigating it, and they go to find him, and they find drugs on him.

---

[6] The prosecutor also argued the crimes were connected because (1) Barros's use of narcotics caused him to violate the restraining order, and (2) when Barros was arrested on the drug offenses, officers collected evidence that connected him to the misdemeanor, a black and white cloth. As Barros correctly informed the court, nothing in the transcript of the November 2010 preliminary hearing supported these allegations. On appeal, the People note that evidence admitted at Barros's misdemeanor trial showed that a black and white mask was found in Barros's backpack at the time of his arrest. Nothing in the record indicates that this evidence was presented to or known to the judge (Hon. Charles F. Haines) at the time of his severance ruling.

Completely different matters, there's nothing similar about it."[7] (Italics added.) Judge Haines, however, declined to rule on Barros's eligibility for Proposition 36 probation.[8]

Barros then attempted to get court officials to assign different case numbers to his misdemeanor and drug charges, explaining that the matter was relevant to his Proposition 36 eligibility, "the central issue in this case." He was unsuccessful.

On January 21, 2011, Barros was convicted by jury of the misdemeanor. On January 26, he was sentenced to one year in jail with credit for 225 actual days in custody plus 225 days of custody credit. He had already served his entire sentence.

In February 2011, Barros entered an open plea of guilty before Judge Carol Yaggy to the drug charges and admitted the prior prison term allegation. The prosecutor recommended a sentence of four years in state prison. She argued Barros was ineligible for Proposition 36 probation under section 1210.1(b)(2): "The two felony counts were severed from the misdemeanor count . . . , and the same court number was kept. [¶] They stayed on the trial calendar together, and they essentially kept moving forward as a single case. [¶] . . . [¶] And I think whether the case has been severed or not is really a hypertechnicality." She renewed her argument that Barros should be denied Proposition 36 treatment regardless of whether he fell within the exception because he was not the type of defendant contemplated by the initiative, focusing on the facts that led to the 2009 stay-away order, the facts underlying the recent misdemeanor conviction, and Barros's criminal history.[9]

The defense argued for Proposition 36 probation based on the severance order. Defense counsel disputed the prosecutor's characterization of Barros as

---

[7] The court also expressed concern about the possible prejudicial effect of joining the charges, a factor relevant only to discretionary severance. The record is clear that Judge Haines based his ruling on the nondiscretionary provisions of section 954. He agreed with Barros's counsel that the offenses were "not properly charged" and stated, "I have to grant the severance."

[8] Immediately after the severance ruling, Barros moved for release on his own recognizance on the ground that he was eligible for Proposition 36 treatment. The court denied the motion. During the hearing, the court referred to Barros's "two cases" (one for the misdemeanor and the other for the drug charges). The minute orders continued to show only one case number.

[9] Barros's criminal history included convictions for theft and commercial burglary in 2002; petty theft, grand theft, battery of a spouse or cohabitant, and drug possession in 2004; infliction of corporal injury on a spouse in 2006; three counts of violating a domestic violence protective order in 2007; infliction of corporal injury on a spouse, false imprisonment, and misdemeanor child abuse in 2008, for which he was sentenced to state prison for two years; and brandishing a firearm, resisting or obstructing an officer, and drug possession in 2009. He received Proposition 36 probation for the 2004 drug possession conviction but not for the 2009 one.

someone who deserved greater punishment due to his criminal history: Barros had already served his time on the misdemeanor conviction and even on "the original case that led to the issuance of the stay-away order, I think he did 24 days on it. I think it's fundamentally unfair to be trying to send this guy to prison on his possession charges for facts that apparently the prosecution could never even make a separate felony case for. [¶] . . . [¶] There is no way that somebody who is possessing .12 grams and .13 grams should go to prison out of the gate." Additionally, he argued, "[T]here's no provision that . . . we can just skip Proposition 36 for someone who we don't like."

Judge Yaggy found Barros ineligible for Proposition 36 treatment, relying on section 1210.1(b)(2). The misdemeanor and drug offenses "were charged in the same document by the District Attorney's Office. They arose [*sic*] related to each other, because it was in the context of the police going to arrest him related to the stay-away order violation that he was located and found to be in possession of narcotics. [¶] So the Court does find . . . that there has been a conviction that was within the same proceeding. [¶] . . . [¶] The fact that the case . . . was severed for trial does not mean[] . . . it was not part of the same proceeding. [¶] And it also does not mean that it cannot be considered for purposes of sentencing . . . . That is a different issue." Although this was the "exclusive[]" ground for the court's decision, the court commented, "the Court does not think that this is the kind of nonviolent drug offender contemplated by the statute. [¶] . . . [¶] . . . [I]f the Court had discretion in the matter, . . . he would not be viewed as the kind of nonviolent drug offender contemplated by the statute, given the history of offenses here." The court suspended imposition of sentence on both felonies and placed Barros on three years' probation on the condition he serve one year in county jail.[10] Barros appeals.[11]

---

[10] Barros has already served his county jail term but argues that his challenge to the denial of Proposition 36 treatment is not moot. "Proposition 36 mandates treatment and has a *diversion* component for successful probationers that can result in dismissal of the charges. (§ 1210.1, subd. ([d]).) Moreover, Proposition 36 provides for a far more lenient approach to violations of probation[] than conventional probation[] as long as the violations are related to nonviolent drug offenses. (§ 1210.1, subd. ([e]).)" The People do not contest this argument.

[11] The tactical maneuvering continues on appeal. On February 15, 2011, Barros separately appealed his misdemeanor conviction, filing with the Appellate Division of the San Francisco Superior Court. On April 14 and again on May 9, 2011, the trial court notified Barros that under California Rules of Court, rule 8.304(a)(2), a felony notice of appeal was required rather than a misdemeanor notice of appeal, since it arose from a felony information. The court instructed him to "file a Misdemeanor Abandonment of Appeal, as well as a Felony Notice of Appeal if you intend to proceed with an appeal for this matter." Barros filed an abandonment of the misdemeanor appeal May 16, 2011, "without waiving my argument that the court's 12/16/10 order granting severance motion created a separate misdemeanor case for the purposes of appeal," and a remittitur issued. On the same day, Barros filed a felony notice of

## III. Discussion

We note first that, contrary to the People's suggestion otherwise, the issue before us is not whether Barros is the type of offender contemplated by the voter initiative in enactment of Proposition 36. We find nothing in the statute that provides the trial court (or this court) with the discretion to make that determination. Rather, we view the narrow issue before us as whether Barros's nondrug misdemeanor conviction was part of the "same proceeding" as his drug charges, rendering him ineligible for Proposition 36 probation under section 1210.1(b)(2). The sentencing court found that it was, despite the earlier severance ruling that the charges had been improperly joined in the first instance.

We conclude that: (1) "same proceeding" as used in section 1210.1(b)(2) means the prosecution of crimes properly charged in a single accusatory pleading and (2) the sentencing judge was bound by Judge Haines's determination that the charges were not properly joined. Accordingly, we reverse the prison sentence imposed and remand for resentencing under Proposition 36.

### A. *"Suitability" for Proposition 36 Treatment*

The People argued in the trial court below, and now on appeal, that Barros was ineligible for sentencing under Proposition 36 because his criminal history and pattern of threatening and violent behavior demonstrate that he is not the type of nonviolent drug offender that Proposition 36 was intended to benefit. Judge Yaggy agreed that "given his history . . . , if the Court had discretion in the matter, . . . he would not be viewed as the kind of nonviolent drug offender contemplated by the statute, given the history of offenses here." Were we reviewing here an exercise of a court's discretionary sentencing authority, on this record this would be an easy case. But, as Judge Yaggy recognized, Proposition 36 does not provide for exercise of judicial discretion in this context.

In the trial court, the prosecutor argued that, under an amendment to Proposition 36 to become operative in 2012, the court would be authorized to deny Barros probation based on his criminal history and the danger he posed to public safety. She was referring to language that first appeared in section 1210.1 as subdivision (c)(2) in 2006 (Stats. 2006, ch. 63, § 7, p. 1215) and was nonsubstantively revised in 2010 (Stats. 2010, ch. 178, § 78) (hereafter referred to as former section 1210.1(c)(2)). Former section 1210.1(c)(2)

---

appeal and noted thereon that the "misdemeanor was severed from felonies." He also filed a "Motion for Constructive Filing and/or Leave to File Late Notice of Appeal," which this court granted.

provided: "Any defendant who has previously been convicted of a misdemeanor or felony at least five times within the prior 30 months shall be presumed to be eligible for treatment under subdivision (a). The court may exclude the defendant from treatment under subdivision (a) if the court, pursuant to the motion of the prosecutor, or on its own motion, finds that the defendant poses a present danger to the safety of others or would not benefit from a drug treatment program. The court shall, on the record, state its findings and the reasons for those findings." Barros had five misdemeanor or felony convictions in the 30 months before he committed his drug offenses and thus would be ineligible for Proposition 36 if this provision were operative.

As noted, former section 1210.1(c)(2) was added by the Legislature in 2006 as part of broader amendments to Proposition 36 in Senate Bill No. 1137 (2005–2006 Reg. Sess.) (Stats. 2006, ch. 63, § 7, p. 1215). But, as the prosecutor acknowledged, Senate Bill No. 1137 was held to be invalid in its entirety on the grounds that the changes were inconsistent with Proposition 36's purposes and the provisions of Senate Bill No. 1137 were not severable. (*Gardner v. Schwarzenegger* (2009) 178 Cal.App.4th 1366, 1379–1380 & fn. 12 [101 Cal.Rptr.3d 229].) The prosecutor contended that former section 1210.1(c)(2) had been reenacted in 2010 in Senate Bill No. 1115 (2009–2010 Reg. Sess.), which was to become operative on January 1, 2012. (See Stats. 2010, ch. 178, § 78.) However, Senate Bill No. 1115 merely made technical amendments to the Penal Code, including a nonsubstantive technical amendment to former section 1210.1(c)(2) as it continued to appear in the annotated codes. Because *Gardner* had invalidated former section 1210.1(c)(2), and the provision had not otherwise been reenacted, it is doubtful that Senate Bill No. 1115 served to reenact the substantive provisions of former section 1210.1(c)(2). We need not decide this issue, however, because even if Senate Bill No. 1115 effectively reenacted the provision, it was not operative at the time Barros committed his drug crimes or when he was sentenced for them. The trial court specifically found that Barros's criminal history would not disqualify him from Proposition 36 treatment.

The People here do not repeat the argument regarding Senate Bill No. 1115 (2009–2010 Reg. Sess.), but cite *People v. Wandick* (2004) 115 Cal.App.4th 131 [9 Cal.Rptr.3d 167] (*Wandick*) for the proposition that a court may deviate from the strict letter of the statutory scheme to ensure that the benefits of the scheme are enjoyed only by offenders of the type contemplated by the voters. In *Wandick*, the defendant was arrested for grand theft while he was awaiting trial on his nonviolent drug offense. By the time the defendant appeared for sentencing on the drug offense, he had already been sentenced to two years in prison on the grand theft charge. The Court of Appeal concluded it would therefore be "an exercise in futility" to sentence him to Proposition 36 *noncustodial* drug treatment and probation. (115 Cal.App.4th at p. 134.)

" '[T]he trial court was not required to engage in the superfluous act of placing a defendant on probation when he could not participate in the treatment program required as a condition of that probation [because of his incarceration]. We do not construe statutes to create absurd results.' [Citation.]" (*Id.* at p. 135.) Here, in contrast, Barros had already served his full sentence on the misdemeanor charge by the time he appeared for sentencing on the drug offense. Thus, it would not have been futile to grant him Proposition 36 probation.

■ *Wandick* went on to state that granting Proposition 36 in the circumstances of that case "would be contrary to the spirit of Proposition 36." (*Wandick, supra,* 115 Cal.App.4th at p. 134.) "[The] defendant's commission of a nondrug felony while awaiting trial on his drug charge took him out of the class of nonviolent substance abusers for whom the voters intended rehabilitative treatment when they passed Proposition 36. [¶] According to the probation report, at the time he committed the present drug offense, defendant was already on informal probation for no fewer than five additional crimes. [¶] The purpose of the initiative was to get immediate help for nonviolent drug addicts, not to provide a 'Get Out of Jail Free' card to career criminals who also happen to partake of drugs. [Citation.] The trial court was not required to apply Proposition 36 literally where such application would plainly conflict with the intent of the statute. [Citation.]" (*Id.* at p. 135.) We do not interpret this broadly worded dictum as authority for a court to ignore the plain language of a statute simply because it finds the language inconsistent with the purposes of the statute. Statutory intent is an aid to resolving ambiguity in statutes, not an excuse to rewrite them. (*Delaney v. Superior Court* (1990) 50 Cal.3d 785, 802–803 [268 Cal.Rptr. 753, 789 P.2d 934].)[12]

The People also cite two cases that interpreted the five-year washout period in section 1210.1, subdivision (b)(1)[13] and resolved ambiguity in the statute by citing the initiative's purpose of diverting nonviolent, but not violent, drug offenders from incarceration to treatment. (See *People v. Superior Court (Martinez)* (2002) 104 Cal.App.4th 692, 699–700 [128 Cal.Rptr.2d 372] (*Martinez*); *People v. Superior Court (Henkel)* (2002) 98 Cal.App.4th 78,

---

[12] In *Canty*, the court wrote, " '[T]he "plain meaning" rule does not prohibit a court from determining whether the literal meaning of a measure comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute.' [Citation.]" (*Canty, supra,* 32 Cal.4th at p. 1276.) Here, we do not find that the plain meaning of "same proceeding" conflicts with the purposes of the initiative.

[13] "Any defendant who previously has been convicted of one or more serious or violent felonies in violation of subdivision (c) of Section 667.5 or Section 1192.7, unless the nonviolent drug possession offense occurred after a period of five years in which the defendant remained free of both prison custody and the commission of an offense that results in (A) a felony conviction other than a nonviolent drug possession offense, or (B) a misdemeanor conviction involving physical injury or the threat of physical injury to another person." (§ 1210.1, subd. (b)(1).)

81–83 [119 Cal.Rptr.2d 465] (*Henkel*).)[14] Here, the People do not identify an ambiguity in the statutory language addressing Proposition 36 eligibility that can be resolved by reference to this legislative purpose.

There was ample reason for the trial court to question whether Barros is a suitable candidate for a treatment program in lieu of incarceration. We do not disagree with *Wandick*'s observation that the purpose of Proposition 36 "was to get immediate help for nonviolent drug addicts, not to provide a 'Get Out of Jail Free' card to career criminals who also happen to partake of drugs." (*Wandick, supra,* 115 Cal.App.4th at p. 135.) But Proposition 36 "takes discretion away from the trial court by mandating that persons convicted of nonviolent drug possession offenses 'shall receive probation.' " (*People v. Murillo* (2002) 102 Cal.App.4th 1414, 1420 [126 Cal.Rptr.2d 358] [unamenability to drug treatment may not be used to revoke Prop. 36 probation].) There are specified disqualifying circumstances, based on a defendant's criminal history, set forth in the statute. (See § 1210.1, subd. (b)(1), (5).) Barros does not fall within those exceptions. The only issue is whether he is excluded under section 1210.1(b)(2).

B. *Meaning of "Same Proceeding" in Section 1210.1(b)(2)*

 On an issue of statutory construction, our review is de novo. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956].) "In interpreting a voter initiative such as Proposition 36, we apply the same principles that govern the construction of a statute. [Citations.] . . . [¶] Our first task is to examine the language of the statute enacted as an initiative, giving the words their usual, ordinary meaning. [Citations.] If the language is clear and unambiguous, we follow the plain meaning of the measure. [Citations.] . . . [¶] The language is construed in the context of the statute as a whole and the overall statutory scheme, and we give 'significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose. [Citation.]' [Citations.] . . . [¶] 'If the Legislature has provided an express definition of a term, that definition ordinarily is binding on the courts.' [Citation.] . . . [¶] . . . [W]here statutory ambiguity exists, [we] adopt[] the interpretation that leads to a more reasonable result. [Citation.] It is appropriate to consider evidence of the intent of the enacting body in addition to the words of the measure, and to examine the

---

[14] The question before the courts was whether "a period of five years" in section 1210.1, subdivision (b)(1) referred to any period of five years, even if followed by additional convictions, or referred to the five-year period immediately preceding the drug offense. Both courts adopted the latter interpretation. (See *Martinez, supra,* 104 Cal.App.4th at pp. 699–700; *Henkel, supra,* 98 Cal.App.4th at pp. 81–83; see also *People v. Superior Court (Jefferson)* (2002) 97 Cal.App.4th 530, 536–537 [118 Cal.Rptr.2d 529] (*Jefferson*) [adopting same interpretation].)

history and background of the provision, in an attempt to ascertain the most reasonable interpretation. [Citations.]"[15] (*Canty, supra,* 32 Cal.4th at pp. 1276–1277.)

The phrase "same proceeding" is not defined in the statute. The plain meaning of the word "proceeding," however, indicates that the relevant nexus between convictions for purposes of applying section 1210.1(b)(2) is the manner in which the underlying charges are prosecuted. By contrast, the other disqualifications in section 1210.1, subdivision (b) turn on the defendant's criminal history (see § 1210.1, subd. (b)(1) [serious or violent felony conviction and not free of certain crimes in previous five years]); the manner in which the defendant's nonviolent drug offense was committed (see § 1210.1, subd. (b)(3) [possession or use of drugs while armed]); or the defendant's refusal of or prior failure on Proposition 36 probation (see § 1210.1, subd. (b)(4) [refusal], (5) [two prior failures]). In *In re Harris,* the Supreme Court reached a similar conclusion when construing section 667, which imposes a five-year enhancement for each prior serious felony conviction on charges "brought and tried separately." (*In re Harris* (1989) 49 Cal.3d 131, 134–135 [260 Cal.Rptr. 288, 775 P.2d 1057].) After noting that the plain language of the phrase clearly implied that "formal distinctiveness of the prior proceedings . . . is the predicate for separate enhancements," the court observed, "The implication becomes clearer still when section 667 is compared with other habitual criminal provisions, such as sections 667.5, 667.6, and 667.7, whose operation depends solely on the existence of prior convictions and prison terms." (*In re Harris,* at p. 135.)

Although we believe that the term "proceeding" refers to the manner in which the charges are initiated and processed by the court, nevertheless ambiguity remains. The "same proceeding" could, for example, refer to a single accusatory pleading, a single case number, a single trial, or a single sentencing hearing or calculation. In seeking the most reasonable interpretation, we consider not only case law interpreting section 1210.1(b)(2), but also analogous case law, and the legislative intent behind the initiative.[16] (See *Canty, supra,* 32 Cal.4th at pp. 1276–1277.)

---

[15] *Canty* also explained, "We also consider that, under the traditional 'rule of lenity,' language in a penal statute that truly is susceptible of more than one reasonable construction in meaning or application ordinarily is construed in the manner that is more favorable to the defendant. [Citation.]" (*Canty, supra,* 32 Cal.4th at p. 1277.) Barros does not specifically argue that the rule of lenity supports his interpretation of the statute, so we do not expressly consider this factor in our analysis. However, we note that application of the rule of lenity would lead to the same result we reach in this opinion.

[16] Another potential guide to our interpretation is the legislative history of the statutory scheme. Because the language at issue was part of the original law adopted by initiative in November 2000 (Voter Information Guide, Gen. Elec. (Nov. 7, 2000) text of Prop. 36, p. 67 (hereafter Voter Information Guide)), the ballot pamphlet for the initiative is our primary source of relevant legislative history. (*Canty, supra,* 32 Cal.4th at pp. 1280–1282.) The parties

The Supreme Court in *Canty* considered the proper construction of section 1210.1(b)(2), but only as to the statutory definition of the term "misdemeanor not related to the use of drugs." (*Canty, supra,* 32 Cal.4th at pp. 1279–1283.) In *Jefferson, supra,* 97 Cal.App.4th 530, the court considered the definition of the term "same proceeding" as used in section 1210.1(b)(2), but in a converse context. The court held that the convictions in that case occurred in the same proceeding where the underlying crimes were charged in a single accusatory pleading and a single case number was assigned, even though the defendant entered into two separate plea agreements. (*Jefferson,* at pp. 537–538.) Jefferson had been charged with both solicitation of prostitution and possession of methamphetamine; the drugs were found on the defendant following his arrest for prostitution. He was charged with both crimes in a single information and a single case number was assigned. (*Id.* at pp. 533, 538.) The trial court, however, first allowed him to enter into separate plea agreements and then granted him Proposition 36 probation on the drug conviction. (*Jefferson,* at p. 534.) The appellate court held this was error: "Both charges arose from a single incident, were charged in the same information, share the same case number, and the pleas were entered at the same hearing. Under these circumstances, we conclude that the conviction for solicitation occurred in the same proceeding as the drug possession conviction." (*Id.* at p. 538.)[17]

---

have not directed our attention to any language in the ballot pamphlet that sheds light on the meaning of the "in the same proceeding" phrase. Our own review also has failed to uncover any significant guidance. The Legislative Analyst's description of the section 1210.1(b)(2) exception closely tracks the statutory language. (Voter Information Guide, analysis of Prop. 36 by Legis. Analyst, p. 23 ["[t]his measure also excludes offenders convicted in the same court proceeding of a misdemeanor unrelated to drug use . . ."].) The argument in favor of the initiative states, "If convicted of a non-drug crime *along with* drug possession, they're not eligible." (*Id.,* argument in favor of Prop. 36, p. 26, italics added.) We find the "along with" language illuminating. The argument against the initiative and the proponents included the following exchange: the opponents argued that Proposition 36 "prevents prison or jail for persons convicted of possessing illegal drugs while armed with loaded firearms" (Voter Information Guide, argument against Prop. 36, p. 27), and the proponents rebutted, "Opponents claim drug offenders with loaded firearms will only get treatment. Not true. Carrying concealed weapons is a separate crime for which one can be jailed" (*id.,* rebuttal to argument against Prop. 36, p. 27). This exchange seemingly referred to section 1210.1, subdivision (b)(3) in the initiative, which excepted defendants who used a firearm (but not defendants who possessed a firearm) while possessing or using certain drugs. (Voter Information Guide, Prop. 36, text of proposed law, p. 67.)

[17] The People argue in connection with the "same proceeding" issue that the "*Jefferson* court examined the voter initiative, and concluded Proposition 36 made a clear distinction between nonviolent, drug-dependent criminal offenders and those with a history of serious or violent felonies." However, *Jefferson* discusses this legislative purpose in relation to its interpretation of section 1210.1, subdivision (b)(1), a Proposition 36 noneligibility provision that is expressly based on a defendant's history of committing serious or violent crimes. *Jefferson* did not tie its interpretation of section 1210.1(b)(2) to the same legislative purpose. (*Jefferson, supra,* 97 Cal.App.4th at pp. 537–539.)

In *People v. Soria*, the Supreme Court similarly looked to the accusatory pleading and assignment of a single case number, and not to the manner of sentencing, to conclude that convictions occurred in the same "case" for purposes of imposing restitution fines " 'in every case' " under sections 1202.4, subdivision (b) and 1202.45. (*People v. Soria* (2010) 48 Cal.4th 58, 62–63 [104 Cal.Rptr.3d 780, 224 P.3d 99] (*Soria*).) The defendant in *Soria* was charged with crimes in three separate accusatory pleadings that were filed on three separate dates. He entered pleas and was sentenced in all three cases pursuant to a single negotiated disposition. (*Id.* at p. 61.) The court nevertheless held the cases remained separate. (*Id.* at pp. 62–63.) "When several cases are resolved by a single plea bargain in which the defendant enters separate pleas, it is plain that there is one bargain but multiple cases." (*Id.* at p. 65.) "In the context of sections 1202.4[, subdivision ](b) and 1202.45, a 'case' is a formal criminal proceeding, filed by the prosecution and handled by the court as a separate action with its own number." (*Id.* at pp. 64–65.)

In both *Jefferson* and *Soria*, there was a single "proceeding" or case when there was a single accusatory pleading and single case number. The manner in which the pleas were entered, or the bifurcation of sentencing were not determinative. We do not see how the assignment of a single case number can be determinative either. The assignment of case numbers is a clerical administrative matter that reflects only the manner in which the prosecution presents the initiating pleadings to the court. In this case, Barros's matters retained throughout the single case number that was assigned when the initial accusatory pleading was filed. Although the trial court later granted severance of the charges on the basis of improper joinder, that case number assignment was never modified. But continued application of a purely clerical designation cannot take precedence over the court's substantive ruling on the merits.

In *Jefferson*, it was undisputed that the charges were properly joined in the accusatory pleading in the first instance.[18] *Jefferson*, however, strongly

---

[18] Unlike Barros, Jefferson was arrested at the scene of the nondrug offense with the drugs in his possession. The offenses were therefore unquestionably "connected together in their commission." (§ 954.) While the "connected together in their commission" language of section 954 has been broadly construed by the courts to " 'permit[] the joinder of different offenses not related to the same transaction or event *"if there is a common element of substantial importance in their commission"* ' " (*Alcala v. Superior Court* (2008) 43 Cal.4th 1205, 1218 [78 Cal.Rptr.3d 272, 185 P.3d 708]), crimes are not necessarily connected in their commission simply because one crime was discovered during investigation of the other. (See *Walker v. Superior Court* (1974) 37 Cal.App.3d 938, 940 [112 Cal.Rptr. 767]; *People v. Saldana* (1965) 233 Cal.App.2d 24, 25–29 [43 Cal.Rptr. 312].)

implies that the joinder standard under section 954 is a substantive limit on whether convictions occur in "the same proceeding" within the meaning of section 1210.1(b)(2). In ruling that the convictions in that case occurred in the same proceeding, the *Jefferson* court explained, *"The trial court* did not create separate proceedings . . . . Although the trial court could sever the counts 'in the interests of justice' and 'for good cause shown,' it did not purport to do so here. (§ 954.) . . . [Indeed,] [t]he People were compelled under *Kellett*[ *v. Superior Court* (1966)] 63 Cal.2d [822,] 828 [48 Cal.Rptr. 366, 409 P.2d 206] to bring the solicitation count in the same proceeding as the drug possession count. Both charges arose from a single incident . . . ."[19] *(Jefferson, supra,* 97 Cal.App.4th at pp. 537–538, italics added.) We infer from *Jefferson*, and agree, that the critical factor is not whether the charges were originally brought in a single pleading but whether the joinder was proper.

Under the People's apparent construction of "same proceeding" (i.e., that it applies whenever there is a single accusatory pleading or case number), any non-drug-related misdemeanor or felony charged with a drug offense would disqualify a defendant, regardless of whether the additional conviction involved violence, and regardless of whether the charges were connected at all in their commission or otherwise related.

We conclude that the use of a single accusatory pleading is determinative only if the charges were properly joined in the pleading. In other words, it is not sufficient that the charges were initially brought in a single accusatory pleading; they must have been *properly* joined and not subsequently dismissed on demurrer[20] or severed pursuant to the nondiscretionary provisions of section 954.[21]

---

[19] *Kellett v. Superior Court, supra,* 63 Cal.2d at page 827, states, "When, as here, the prosecution is or should be aware of more than one offense in which the same act or course of conduct plays a significant part, all such offenses must be prosecuted in a single proceeding unless joinder is prohibited or severance permitted for good cause. Failure to unite all such offenses will result in a bar [under section 654] to subsequent prosecution for any offense omitted if the initial proceedings culminate in either acquittal or conviction and sentence." (Fn. omitted.)

[20] The preferred method for challenging improper joinder is by demurrer pursuant to section 1004, subdivision 3. (*People v. Molano* (1967) 253 Cal.App.2d 841, 846 [61 Cal.Rptr. 821] (*Molano*), disapproved on other grounds as stated in *People v. Roberts* (1992) 2 Cal.4th 271, 314 [6 Cal.Rptr.2d 276, 826 P.2d 274].) By statute, if misjoinder is evident on the face of the complaint and the defendant fails to challenge misjoinder by demurrer, the issue is forfeited. (§ 1012; *People v. Kemp* (1961) 55 Cal.2d 458, 474 [11 Cal.Rptr. 361, 359 P.2d 913] (*Kemp*).) However, case law holds that misjoinder may be raised for the first time in a motion to sever for purposes of severing the charges for trial. (*Kemp*, at pp. 474–475; *Molano*, at p. 846; see Cal. Criminal Law: Procedure and Practice (Cont.Ed.Bar 2012) § 7.30, pp. 163–164.)

[21] We emphasize that we focus on whether charges *may* properly be joined, not on whether other considerations militate in favor of separate trials.

■ This interpretation comports with the declared purpose and overall statutory scheme of Proposition 36. The purpose of the initiative is to provide treatment rather than incarceration for nonviolent drug offenders, thus saving money, freeing penal resources for more serious offenders, and enhancing public health and safety. (Voter Information Guide, *supra*, Prop. 36, text of proposed law, p. 66; *Canty, supra,* 32 Cal.4th at pp. 1280–1281 & fn. 3.) To fulfill this purpose, Proposition 36 *mandates* probation for nonviolent drug offenders with only limited exceptions and vests only limited sentencing discretion in the trial court. (§ 1210.1.) Absent a significant criminal history *as defined in the statute* or the commission of a serious or non-drug-related crime in connection with the drug offense, the court's discretion is constrained. Arguments that it should be otherwise must be addressed to the Legislature or to the electorate. Our interpretation of section 1210.1(b)(2) ensures that additional nonstatutory exclusions cannot be created simply by aggregation of unrelated offenses in a single pleading.

## C. *Effect of the Severance Ruling*

We must also consider whether Judge Yaggy, the sentencing judge, was bound by Judge Haines's prior ruling that the counts were improperly joined or free to reconsider the issue in the distinct context of determining whether Barros was eligible for Proposition 36 probation.[22] Barros insists that Judge Yaggy was bound by Judge Haines's ruling that the misdemeanor and the drug charges were improperly joined. We agree.

■ A criminal court "generally has the authority to correct its own prejudgment errors. [Citation.] . . . [¶] . . . [¶] Different policy considerations, however, are operative if the reconsideration is accomplished by a different judge. [In that circumstance], the general rule is just the opposite: the power of one judge to vacate an order made by another judge is limited. [Citation.] This principle . . . is designed to ensure the orderly administration of justice. 'If the rule were otherwise, it would be only a matter of days until we would have a rule of man rather than a rule of law. . . .' [Citation.] [¶] . . . [¶] [Moreover,] [f]or one superior court judge, no matter how well intended, even

---

[22] We do not address the merits of Judge Haines's ruling. While the People argue that Judge Yaggy correctly found that Barros's nondrug offense was related, and that factors justifying joinder were present here, they did not seek writ review of Judge Haines's ruling, nor do they argue that review of that ruling would be appropriate under section 1252 ("[o]n an appeal by a defendant, the appellate court shall, in addition to the issues raised by the defendant, consider and pass upon all rulings of the trial court adverse to the State which it may be requested to pass upon by the Attorney General").

if correct as a matter of law, to nullify a duly made, erroneous ruling of another superior court judge places the second judge in the role of a one-judge appellate court." (*In re Alberto* (2002) 102 Cal.App.4th 421, 426–427 [125 Cal.Rptr.2d 526].) Such review would violate the California Constitution. (See *People v. Konow* (2004) 32 Cal.4th 995, 1018 [12 Cal.Rptr.3d 301, 88 P.3d 36] (*Konow*), citing *Williams v. Superior Court* (1939) 14 Cal.2d 656, 662–663 [96 P.2d 334]; Cal. Const., art. VI, § 4.) Exceptions to the rule apply when the first judge is unavailable to reconsider his or her prior ruling (*New Tech Developments v. Bank of Nova Scotia* (1987) 191 Cal.App.3d 1065, 1069–1070 [236 Cal.Rptr. 746]); when the first ruling was made through inadvertence, mistake or fraud (*In re Alberto*, at p. 430); or when a statute expressly authorizes a later judge to reconsider the ruling, usually on the basis of new circumstances (*id.* at pp. 430–431 [discussing § 1289]; *Konow*, at pp. 1016, 1020–1021 [discussing §§ 871.5, 995 and approving *In re Alberto*]).

In *In re Alberto*, a superior court judge set bail at $35,000. (*In re Alberto, supra,* 102 Cal.App.4th at p. 424.) When the case was later assigned to a new judge for all purposes, the People asked the new judge to reconsider the issue on the same facts. The new judge held the first judge's ruling was erroneous and set bail at $1,035,000. (*Id.* at pp. 424–425.) Although section 1289 authorized the second judge to increase or reduce the amount of bail "upon good cause shown," the appellate court held that disagreement with the first judge's decision did not constitute good cause. Instead, bail could be raised or reduced based only on new circumstances; otherwise, the later judge's ruling would be an unauthorized appellate review of the first judge's ruling. (102 Cal.App.4th at pp. 430–431.)

Under *In re Alberto*, Judge Yaggy did not have the authority to, in effect, order the counts joined after Judge Haines had severed them. Of course, Judge Yaggy did not order joinder; instead, she denied Barros probation under section 1210.1(b)(2) on the basis that the convictions were "related to each other" and were therefore "within in the same proceeding." Nevertheless, this was contrary to Judge Haines's earlier determination that the offenses were "not connected." Because we find the section 954 joinder criteria applicable to the "same proceeding" standard in section 1210.1(b)(2), Judge Yaggy's de facto reconsideration of the previously decided issue was improper. Judge Haines's ruling necessarily resolved the question of Barros's eligibility for Proposition 36 probation.

## IV. DISPOSITION

The judgment is reversed. The case is remanded to the trial court for resentencing consistent with the views expressed in this opinion.

Jones, P. J., and Needham, J., concurred.