Filed 8/24/21  Russell v. Walsh CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| STEPHEN RUSSELL<br>    Plaintiff and Appellant,<br><br>v.<br><br>TARA WALSH,<br>    Defendant and Respondent. | A160588<br><br>(San Francisco Super.<br>Ct. No. FPT-18-377425) |

Plaintiff Stephen Russell appeals from the San Francisco Superior Court's denial of his request that it renew for five years a six-month domestic violence restraining order (DVRO) previously issued against defendant Tara Walsh, Russell's former girlfriend and the co-parent of their young child. Russell argues the court applied incorrect legal standards to deny his renewal request and conclude Walsh did not have notice of the DVRO's "no contact" provision, and abused its discretion in evaluating the evidence of Walsh's abuse.  Walsh argues the court lacked jurisdiction over the renewal proceedings and that Russell's claims lack merit.  We conclude the court had jurisdiction and Russell does not show error, in part because he relies on documents not contained in the record before us.  We affirm.

1

# BACKGROUND

## I.

### *The 2018 Proceedings*

Russell and Walsh are a former unmarried couple and the parents of a young child born to Walsh in January 2018, when the couple lived together in New York.  By March 2018, the three lived together in San Francisco.  In June 2018, Russell filed a parentage action in the County of San Francisco Superior Court (Superior Court).  Walsh thereafter returned to New York with their child and in July 2018 filed a custody petition in the Westchester County Family Court (Westchester Court).  This triggered a jurisdictional conflict between the two courts under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) regarding child custody determinations. (See Fam. Code, § 3421.)

Also, in July 2018, Russell obtained an emergency one-week protective order against Walsh from the San Francisco Police Department based on his allegation that Walsh had put Seroquel in his drinks without his consent.  He then filed a request in Superior Court for a DVRO against Walsh based on this and other allegations of abuse.  The court issued a temporary restraining order against Walsh pending consideration of Russell's request.

In August 2018, the Superior Court and the Westchester Court held a joint bench conference at which they agreed that the Superior Court would stay Russell's parentage action and related motions until the Westchester Court ruled on its jurisdiction under the UCCJEA.  In agreeing to this stay, the Superior Court stated, "I think I have jurisdiction over [Russell's] DV restraining order request so I will hear that.  And . . . the child is not included on it."  Subsequently, the Superior Court told the parties at an August 2018 hearing that it was staying the parentage action "and related motions" until

2

the Westchester Court ruled. It then heard Russell's DVRO request but withheld a decision until it could hold another hearing. The court's register of actions indicates the DVRO action was then dismissed after the parties agreed to withdraw the temporary restraining order.

## II.

### *The 2019 DVRO Proceeding*

In June 2019, Russell again filed a request for a DVRO against Walsh in the Superior Court, this time for a period of five years, based on the same abuse he had asserted in 2018 as well as other alleged abuse.

Both parties, represented by counsel, testified at a long-cause hearing held in October 2019, and their counsel presented argument to the court. It appears from the hearing transcript, which was filed under seal, that Russell contended in his papers and before the court that Walsh engaged in a series of abusive behaviors towards him, most of which Walsh denied. However, Walsh admitted that while they were living together, she put a medication prescribed to her into drinks of Russell's without his knowledge or consent on at least two occasions.

At the conclusion of the hearing, the court found that Walsh's putting her prescription medication into Russell's drinks without his knowledge or consent warranted a DVRO against her but rejected or did not rely on the other claims of abuse. The court stated its intent to issue a six-month, "no harassment, personal conduct orders only," but not a no-contact order, against Walsh. The court explained it was ordering a relatively short time period for the DVRO because "I don't think that under the circumstances that exist now—they are no longer in a relationship, they live far away from each other—there is a need for a longer amount of time or a stay away. They still have their [child] to deal with, and there's going to be exchanges; so you're

3

going to have to deal with that. But I think a no harassment, no threats, no stalking, no disturbing the peace type of restraining order for the next six months is warranted." The court said it would order "[p]ersonal conduct orders only with the box checked to allow for court-ordered visitation per the [Westchester Court], which has custody jurisdiction over the custody issue."

Despite the court's statements at the hearing, it apparently issued a written DVRO—which Russell does not include in the record before us—that had a box next to "no contact" checked, according to the court's description of the written DVRO at the 2020 renewal request hearing.

## III.

### *Russell's 2020 DVRO Renewal Request*

In 2020, Russell apparently filed a request with the Superior Court (also not included in the record) that it renew the 2019 DVRO for five years. The record does not contain any of the papers filed by the parties regarding this request, but does contain the transcript of the hearing the court held.

At the renewal request hearing, Russell, through counsel, argued he had a reasonable apprehension of future abuse by Walsh because of "the significant abusive behavior that led to the issuance of the original restraining order," "the fact that there has been no significant change in circumstances," the limited time that had passed since the issuance of the 2019 DVRO, Walsh's lack of remorse, her continued efforts to contact Russell in violation of the DVRO's "no contact" provision, and her efforts to prevent him from seeing their child. Counsel claimed Walsh had violated the DVRO by sending emails to Russell reporting about their child and sending anonymous text messages to Russell, but the evidence of this, if any, is not contained in the record before us. Counsel acknowledged the emails were not harassing in content, but claimed they were nonetheless harassing when

4

viewed in the context of the couple's dispute over his visitation rights regarding the child.

The court rejected the contention that Walsh's emails violated the 2019 DVRO. It concluded, apparently based on Walsh's own declaration (which also is not contained in the record), that she had no notice of the 2019 DVRO's "no contact" provision because she had never received the final, written DVRO.

The court reviewed the emails Walsh sent Russell about their child and found they were "friendly" and did not constitute "a continuation of any harassing behavior"—that is, they were unrelated to the "specific conduct" of placing medication into Russell's drink, the basis for the 2019 DVRO. Also, the court found the emails "appear[ed] to be ordered by the [Westchester Court]," which, as discussed above, was handling the child custody proceedings. The court concluded that Walsh did not violate the 2019 DVRO and declined to renew it.

Russell timely appealed. Walsh filed a request for judicial notice on May 5, 2021, with this court, which Russell does not oppose. We grant this request regarding exhibits A through C under Evidence Code sections 452, subdivision (d) and 459. We deny it regarding exhibits D through H, which are not relevant to our resolution of this appeal.

## DISCUSSION

### I.

### *The Superior Court Had Jurisdiction.*

Walsh argues that because the Superior Court dismissed Russell's parentage action and "all related proceedings" in September 2018, it lacked

5

jurisdiction to issue a DVRO in 2019 and entertain further proceedings in 2020. We disagree.

**A. Relevant Proceedings Below**

As we have discussed, in June and July 2018, Russell filed both a parentage action and a DVRO request in the Superior Court. Both were filed under the same case number. In July 2018, Walsh filed a custody petition in the Westchester Court, and the two courts soon agreed that the Superior Court would stay the parentage action until the Westchester Court ruled on jurisdiction under the UCCJEA regarding custody proceedings, but that the Superior Court could proceed to hear Russell's DVRO request. The Superior Court held one hearing and scheduled another regarding the initial DVRO request, but, again, the court's register of actions indicates the action was then dismissed after the parties agreed to withdraw the temporary restraining order. In September 2018, after the Westchester Court ruled that it had jurisdiction under the UCCJEA, the Superior Court dismissed Russell's parentage action along with "all related proceedings," "declin[ing] to exercise jurisdiction."

Russell's second (2019) DVRO request was filed under the same case number as the previous proceedings. Walsh attended the hearing on this request and did not challenge the Superior Court's jurisdiction.

**B. Analysis**

Walsh argues the Superior Court lacked jurisdiction to issue the 2019 DVRO because it was "issued . . . after the Superior Court had stayed all proceedings and ultimately dismissed the [parentage action] and related

6

proceedings" and, therefore, it did not have jurisdiction to consider its renewal in 2020. We disagree.

The jurisdictional question here—although not expressly identified in Walsh's brief—relates to subject matter, as she does not dispute the Superior Court's personal jurisdiction over her or claim she lacked "presence, contacts, or other conduct within the forum state." (*Donaldson v. National Marine, Inc.* (2005) 35 Cal.4th 503, 512 [defining issues of personal jurisdiction].) Rather, she challenges the Superior Court's "power to hear and resolve a particular dispute or cause of action" (*Serrano v. Stefan Merli Plastering Co., Inc.* (2008) 162 Cal.App.4th 1014, 1029 [defining issues of subject matter jurisdiction]), i.e., Russell's 2019 DVRO request and the proceedings that followed. " 'Where the evidence is not in dispute, a determination of subject matter jurisdiction is a legal question subject to de novo review.' " (*Saffer v. JP Morgan Chase Bank, N.A.* (2014) 225 Cal.App.4th 1239, 1248.)[1]

The Westchester Court ruled under the UCCJEA that the Superior Court did not have subject matter jurisdiction over Russell's *parentage* action. This appears to have been appropriate because "the UCCJEA is the 'exclusive means of determining subject matter jurisdiction in custody disputes involving other jurisdictions.' " (*In re Marriage of Fernandez-Abin & Sanchez* (2011) 191 Cal.App.4th 1015, 1037.) But neither of the two courts determined that the Superior Court lacked jurisdiction to consider Russell's DVRO request, which did not involve a custody determination but a claim of

---

[1] Russell does not contend that Walsh has forfeited this issue by not first raising it below. We do not decide the question, but case law suggests Walsh has not forfeited the issue. (See, e.g., *Totten v. Hill* (2007) 154 Cal.App.4th 40, 46 [" 'The adequacy of the court's subject matter jurisdiction must be addressed whenever that issue comes to the court's attention' "].)

domestic violence under California's Domestic Violence Protection Act (DVPA). (Fam. Code, § 6211, § 6203.)

Still, Walsh implies, the Superior Court in 2018 acknowledged a lack of jurisdiction when it dismissed Russell's DVRO request along with the parentage action. Walsh relies on the language of the dismissal order, in which the court stated it was dismissing "the Petition to Establish Parental Relationship filed on June 4, 2018, and all related proceedings." This ruling, Walsh contends, encompassed the DVRO request. Her argument is not persuasive for two reasons.

First, it is evident from the record that the two courts discussed Russell's DVRO request, agreed the Superior Court could hear it and agreed to "leave it up to [Russell]" whether to "withdraw his DV restraining order request [in San Francisco] and refile in New York." In other words, the courts' discussion indicated their understanding that Russell's DVRO request was not among the "related proceedings" the Superior Court would stay under the UCCJEA.[2] Indeed, the Superior Court made plain that it intended to maintain its jurisdiction over Russell's DVRO request, recognizing that the request and the parties' custody proceedings were independent of each other. It stated that it would "stay the petition to establish parental relationship and related motions including the motion to dismiss" but would continue to

_____

[2] In its August 2018 conference with the Westchester Court, the Superior Court indicated that, along with Russell's parentage petition, it had before it Walsh's motion to dismiss that action for lack of jurisdiction and Russell's request for custody and visitation. Most likely the Superior Court's later reference in its dismissal order to "related proceedings" referred to the child custody and visitation matters. In the August 2018 discussion, the Superior Court contrasted these child-related matters with Russell's "request for the DV restraining order," which, it observed, "does not include the child."

8

hear the DVRO request, saying, "I think I have jurisdiction over Father's [i.e., Russell's] DV restraining order request so I will hear that."

Second, Walsh does not establish that Russell's 2018 and 2019 DVRO requests were part of the same action. Walsh contends they were filed in the same action, which was dismissed in September 2018, ending the court's jurisdiction over matters filed in the case. However, the fact that the requests were filed under the same case number is of no consequence. "The assignment of case numbers is a clerical administrative matter that reflects only the manner in which [a party] presents the initiating pleadings to the court; the "continued application of a purely clerical designation cannot take precedence over the court's substantive ruling on the merits." (*People v. Barros* (2012) 209 Cal.App.4th 1581, 1595 [assignment of a single case number to multiple charges not sufficient to show the charges were of the same proceeding].) Further, the first DVRO proceeding having been dismissed, the second was necessarily a new action. Russell's 2019 DVRO request as filed is not contained in the record, but the hearing regarding it indicates the court treated it as a separate proceeding from the 2018 DVRO. Walsh gives us no reason to question that the two requests were separate.

In short, Walsh's argument that the Superior Court lacked subject matter jurisdiction here is without merit.

## II.

### *Russell Fails to Show the Court Abused Its Discretion in Denying His DVRO Renewal Request.*

### A. Russell Fails to Show the Court Committed Legal Error.

Russell first argues that the court abused its discretion in denying his DVRO renewal request by failing to apply the correct legal standards in two respects: (1) it rejected his request without considering whether he had a reasonable apprehension of future abuse; and (2) its conclusion that Walsh

9

had not received notice of the 2019 DVRO's "no contact" provision ignored that by statute she received notice of the DVRO as a result of her attendance at the October 2019 hearing. We review these claims for abuse of discretion. However, whether the legal standard the Superior Court applied is correct is a question of law that we review de novo. (*Cueto v. Dozier* (2015) 241 Cal.App.4th 550, 560 (*Cueto*).)

Further, and most pertinent here, " ' "[a]ll intendments and presumptions are indulged to support [the judgment] on matters as to which the record is silent, and error must be affirmatively shown." ' " (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140 (*Ketchum*).) An appellant has the burden of providing a record of the trial court proceedings adequate enough to allow an appellate court to assess claims of error. (*Id.* at pp. 1140-1141.) If an appellant " 'fail[s] to furnish an adequate record . . . [the] claim must be resolved against [him].' " (*Id.* at p. 1141.) "We cannot presume error from an incomplete record." (*Christie v. Kimball* (2012) 202 Cal.App.4th 1407, 1412.)

### 1. The Reasonable Apprehension Standard

Russell first argues that the court used the wrong legal standard in denying his DVRO renewal request because it failed to assess his apprehension of future abuse from the perspective of a reasonable person in the same circumstances. Russell fails to show error.

"[A]n objective test must be satisfied before a protective order is renewed in contested cases." (*Ritchie v. Konrad* (2004) 115 Cal.App.4th 1275, 1290 (*Ritchie*).) Under this test, the "trial court should renew the protective order, if, and only if, it finds by a preponderance of the evidence that the protected party entertains a 'reasonable apprehension' of future abuse." (*Ibid.*) In making this determination, a court should consider factors such as "the evidence and findings on which that initial order was based," "any significant changes in the circumstances surrounding the events justifying

10

the initial protective order" and "changes that enhance the opportunity and possibility of future abuse[.]" (*Id.* at pp. 1290-1291.) The trial court is not required to state the legal standard when ruling on a DVRO request. (See *Cueto, supra*, 241 Cal.App.4th at pp. 560-561 ["While the trial court referred to a 'reasonable person' without including the phrase 'in the same circumstances' . . . the record as a whole demonstrates the trial court understood and applied the correct legal standard."].)

Here, Russell fails to show that the Superior Court did not apply the proper legal standard. At the renewal request hearing, Russell's counsel fully explained the legal standard to the court and argued the evidence met that legal standard. The court's statements at the hearing indicated it considered these arguments and the evidence related to it, such as the emails that counsel claimed showed Walsh had repeatedly violated the DVRO. Also, the court considered the evidence and findings of the original order, noting the basis for the order was Walsh putting medication into Russell's drinks without his consent. It considered the significant changes in the circumstances surrounding the events which justified the 2019 DVRO, concluding that "what we have here is a very different type of situation." Finally, the court did not see any changes that enhanced the opportunity and possibility of future abuse, stating "I don't think there's a continuation of any harassing behavior." The court's reasoning demonstrates an understanding and application of the legal standard set forth in *Ritchie*.

Similar to the appellant in *Cueto*, Russell argues the Superior Court did not use the correct legal standard because it never mentioned the "reasonable apprehension" standard in assessing his fear of future abuse. Russell further contends the court did not inquire into whether he was apprehensive of future abuse from Walsh. However, we presume the correct

11

legal standard was applied. (*Ketchum*, *supra*, 24 Cal.4th at pp. 1140-1141.) Further, the trial court is not obliged to recite the standard. (See *Cueto, supra*, 241 Cal.App.4th at pp. 560-561.) Therefore, Russell's argument fails.

### 2. The Legal Standard Regarding Notice of the 2019 DVRO.

Russell next argues that the Superior Court applied the wrong legal standard in finding that Walsh did not have notice of the 2019 DVRO's terms despite her presence at the October 2019 hearing, when the court announced it would issue a DVRO. Russell is incorrect.

Russell relies on the fact that the Superior Court issued the 2019 DVRO under Family Code section 6384, which provides "no additional proof of service is required for enforcement of the order" if the respondent makes a "personal appearance in court to *hear the terms of the order* from the court." (Fam. Code, § 6384, subd. (a), italics added.) There is no question that Walsh was present for the October 2019 DVRO hearing. Nonetheless, she did not hear the terms of the 2019 DVRO then because the court did *not* issue its final order at that time. Rather, the court merely indicated its intention to issue a "no harassment, personal conduct orders only, not a stay away" DVRO for six months and asked Russell's counsel to submit a proposed written order to the court. Therefore, Family Code section 6384's no-further-notice provision did not apply to Walsh.

And indeed, the court's stated intentions at the October 2019 hearing apparently *were* different from the terms of the final, written 2019 DVRO that it issued after the hearing. We understand this to be the case because, although the 2019 DVRO is also not in the record before us, the court stated at the 2020 renewal request hearing that "no contact" was checked on the 2019 DVRO. Based on the difference between the court's October 2019 hearing statements and the 2019 DVRO, and on Walsh's contention, which the court found credible, that, while she attended the October 2019 hearing,

12

she did not receive the written 2019 DVRO, the court in 2020 found that Walsh only received notice at the hearing that the court intended to issue a DVRO that restricted her personal conduct but would not prohibit contact between her and Russell because of their child. Russell gives us no reason to question the court's finding. In light of the trial court's finding that Walsh had no notice of the no-contact aspect of the ultimate written DVRO, Russell has not established legal error.

### C. Russell Has Not Shown That the Superior Court Abused Its Discretion in Considering the Evidence of Walsh's Abuse.

Russell further argues that the Superior Court, even if it applied the correct legal standards, abused its discretion in its consideration of certain evidence of Walsh's abuse. Again, we disagree.

Under the abuse of discretion standard of review, we review the lower court's factual findings for substantial evidence. (See *Jennifer K. v. Shane K.* (2020) 47 Cal.App.5th 558, 580 ["Because substantial evidence supports the court's finding that appellant failed to show that she was 'abused' within the meaning of the DVPA, the denial of her application for a DVRO cannot be deemed an abuse of discretion"].) That is, "we look only to the evidence supporting the prevailing party. [Citation.] We discard evidence unfavorable to the prevailing party as not having sufficient verity to be accepted by the trier of fact. [Citation.] Where the trial court has drawn reasonable inferences from the evidence, we have no power to draw different inferences, even though different inferences may also be reasonable." (*Federal Home Loan Mortgage Corp. v. La Conchita Ranch Co.* (1998) 68 Cal.App.4th 856, 860.) "[E]ven where there are no express findings, we must review the trial court's exercise of discretion based on implied findings that are supported by substantial evidence. [Citation.]" (*Ibid.*)

13

Russell first claims that the evidence and findings underlying the 2019 DVRO were sufficient in themselves to justify renewal and that it was therefore an abuse of discretion for the Superior Court to deny his renewal request.

As we have indicated, "the existence of [an] initial order certainly is relevant and the underlying findings and facts supporting that order often will be enough in themselves to provide the necessary proof to [justify renewal]." (*Ritchie, supra*, 115 Cal.App.4th at p. 1291.) Nonetheless, a trial court should only review "the evidence and findings on which that initial order was based *in appraising the risk of future abuse* should the existing order expire." (*Id.* at p. 1290, italics added.)

In issuing the DVRO in 2019, the court relied solely on the evidence that Walsh had put her prescription medication in Russell's drinks without his knowledge or consent, which Walsh admitted having done at least twice. At the DVRO renewal request hearing in 2020, the court found that this alone was the basis for the 2019 DVRO, and either rejected other claims of abuse or found, inferentially, that they were not grounds for a DVRO. Russell ignores this finding, and further ignores the basic principles of appellate review by implicitly arguing we should relitigate the credibility and significance of the evidence presented by the parties in 2019—much of which is not in the record before us. We shall not do so.

Further, Russell fails to include in the record any of the papers submitted to the court regarding his 2020 DVRO renewal request. We are unable to properly evaluate his claims of evidentiary error in the absence of a full record of what the court considered in 2020 in evaluating his renewal request. Because Russell " 'fail[s] to furnish an adequate record . . . [the]

14

claim must be resolved against [him].'" (See *Ketchum*, *supra*, 24 Cal.4th at p. 1141.)

Russell also argues on three grounds that the court abused its discretion in 2020 by finding that, because Walsh was residing in New York at the time of the renewal request, circumstances had so changed that Russell no longer had a reasonable apprehension of future abuse. These arguments, too, are unpersuasive.

A trial court evaluating a DVRO renewal request may consider "any significant changes in the circumstances surrounding the events justifying the initial protective order." (*Ritchie*, *supra*, 115 Cal.App.4th at p. 1291.) Such changes may weaken or strengthen the case for renewal: on one hand, "the restrained and protected parties [may have] moved on with their lives so far that the opportunity and likelihood of future abuse has diminished to the degree they no longer support a renewal of the order"; on the other hand, there may have been "no significant changes or even perhaps changes that enhance the opportunity and possibility of future abuse[.]" (*Ibid.*)

Russell first asserts that Walsh violated the 2019 DVRO by emailing Russell and purportedly sending him anonymous text messages, and that her knowing violations constituted acts of abuse. As we have discussed, the court found Walsh did not receive notice of the terms of the final written DVRO and thus did not knowingly violate the DVRO by emailing Russell. Further, the court stated that it had "reviewed all of the emails that were allegedly sent" and found they "appear[ed] to be friendly, where Ms. Walsh is updating Mr. Russell on the child's health and condition, which does appear to be ordered by the court in New York." Given that none of the emails and text messages are contained in the record before us, Russell gives us no basis to

15

second-guess the Superior Court's findings and conclusions. (See *Ketchum*, *supra*, 24 Cal.4th at p. 1141.)

Second, Russell contends Walsh's residence in New York should not be deemed a changed circumstance because "some of the abuse that underlay the initial restraining order was committed remotely (i.e., through electronic means via phone calls, emails, and text messages)," such as Walsh refusing to sign an agreement preventing her from releasing videos and photos of Russell and her "fail[ure] to comply with an Order on Mental Examination." But as we have discussed, none of these contentions were a basis for the 2019 DVRO that Russell sought to renew. Therefore, the trial court had no obligation to consider them (See *Ritchie*, *supra*, 115 Cal.App.4th at p. 1291), and neither does this court.

Third, Russell argues the court should not have found Walsh's living in New York was a changed circumstance because people frequently travel from New York to California. The court did not expressly discuss this argument. Nonetheless, the 2019 DVRO relied solely on Walsh's conduct in covertly medicating Russell while she was living with him and not on other alleged forms of abuse. And indeed, the court in 2019 limited the time duration of the DVRO to six months because the two had terminated their romantic relationship and Walsh had moved to New York. The court did not abuse its discretion in giving little or no weight to this argument.

In short, Russell has not shown that the court's treatment of the evidence and denial of his renewal request was an abuse of discretion.

## DISPOSITION

We affirm. Walsh is entitled to her costs of appeal.

16

_____
STEWART, J.

We concur.

_____
RICHMAN, Acting P.J.

_____
MILLER, J.

*Russell v. Walsh* (A160588)